UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

                              Plaintiff,

                    -v-    20-cr-335

JACOB DELANEY,

                              Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


TRANSCRIPT OF PROCEEDINGS
THE HONORABLE THOMAS J. McAVOY
October 13, 2021
445 Broadway, Albany, New York


FOR THE GOVERNMENT:

OFFICE OF THE UNITED STATES ATTORNEY
BY:  Emily Powers, AUSA
445 Broadway
Albany, New York 12207


FOR THE DEFENDANT:

SCOTT W. ISEMAN, ESQ.
125 High Rock Avenue, Suite 215-H
Saratoga Springs, New York 12866

U.S. v DELANEY - 20-cr-335

1              COURT CLERK:  The date is Wednesday,

2    October 13th, 2021, at 3 p.m., in the matter of the

3    United States of America versus Jacob Delaney, case

4    number 20-cr-335.  We're here for a change of plea

5    hearing.

6              Appearances for the record, please.

7              MS. POWERS:  Good afternoon, your Honor.

8    Emily Powers for the government.

9              THE COURT:  Good afternoon, Ms. Powers.

10             MR. ISEMAN:  Good afternoon, your Honor.

11   Scott Iseman for Jacob Delaney, who's in court at my

12   left.  Good afternoon, your Honor.

13             THE COURT:  Good afternoon, Mr. Iseman.

14             Good afternoon, Mr. Delaney.

15             THE DEFENDANT:  Good afternoon, your Honor.

16             THE COURT:  All right.  As I understand it,

17   this afternoon Mr. Delaney wishes to change his plea and

18   enter a plea of guilty to counts one through four of the

19   indictment and admit to the allegations about forfeiture

20   in that document.

21             Is that your understanding, Mr. Iseman?

22             MR. ISEMAN:  It is, your Honor.

23             THE COURT:  And how about you?  Who is

24   appearing for the government?  Is that okay with you,

25   Ms. Powers?

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1          MS. POWERS:  Yes, your Honor.

2          THE COURT:  All right.  Swear the defendant.

3          COURT CLERK:  Mr. Delaney, please stand and

4  raise your right hand.

5          (Defendant placed under oath.)

6          THE COURT:  All right, Mr. Delaney, would you

7  please state your full name for us.

8          THE DEFENDANT:  Jacob Edward Delaney.

9          THE COURT:  How old are you?

10         THE DEFENDANT:  23 years old.

11         THE COURT:  What's your date of birth?

12         THE DEFENDANT:  November 22nd, 1997.

13         THE COURT:  Are you married?

14         THE DEFENDANT:  No.

15         THE COURT:  Do you have any children?

16         THE DEFENDANT:  No.

17         THE COURT:  How far did you go in school?

18         THE DEFENDANT:  I finished undergrad.

19         THE COURT:  All right.  What kind of work have

20  you done over the years?

21         THE DEFENDANT:  I've done substitute teaching

22  and -- this past year, so I was working in a store.

23         THE COURT:  Okay.  And have you had any

24  alcohol or narcotics in the past 48 hours?

25         THE DEFENDANT:  No, your Honor.


Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1              THE COURT:  Are you currently or have you

2    recently been under the care of any physician,

3    psychiatrist, or other medical care provider for any

4    physical or mental health condition?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Can you tell me about that.

7              THE DEFENDANT:  I've just been seeing a

8    psychiatrist once in a while.

9              THE COURT:  Say that again.

10             THE DEFENDANT:  There's a psychiatrist I've

11   been seeing once a month.

12             THE COURT:  Has he given you any medications?

13             THE DEFENDANT:  Yes.

14             THE COURT:  What's he given you?

15             THE DEFENDANT:  Lexapro and Adderall.

16             THE COURT:  All right.  Is any of that

17   affecting your ability to understand the charges and the

18   consequences?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  Okay.  So have you discussed the

21   matter with your attorney, Mr. Iseman?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Did he explain the charge to you?

24   The charges?

25             THE DEFENDANT:  Yes, your Honor.


                 Lisa L. Tennyson, CSR, RMR, FCRR
                 UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1          THE COURT:  Do you understand them?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  All right.  In a few minutes, I'm

4   going to be asking you some additional questions in

5   order to learn if you're pleading guilty freely and

6   voluntarily with an understanding of the charges and the

7   consequences.

8          I'm going to be asking you if anybody has made

9   any promises of leniency to you to induce you to plead

10   guilty or threaten you with the use of force to induce

11   you to plead guilty.

12          I will be asking you something about what you

13   did in this case so the Court can establish that there's

14   a factual basis for accepting and entering your plea,

15   and I'm going to ask you to reaffirm the information you

16   just gave me about your personal history and background,

17   and I want to advise you if your answers are not

18   truthful, they may later be used against you in a

19   prosecution for perjury or making a false statement.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Before I ask you those additional

23   questions and before the clerk takes your plea, I have

24   to advise you of certain rights that you have in

25   connection with this matter.

U.S. v DELANEY - 20-cr-335

1          First of all, you have the right to persist in

2     your original plea as to all counts in the indictment.

3          You have the right to a speedy and public

4     trial by an impartial jury of 12 persons or to a trial

5     by the Court alone if you were to waive or give up your

6     right to a jury trial.  At such a trial, you would have

7     the right to the assistance of an attorney.  You would

8     have the right to confront, that is, to see and hear any

9     witnesses sworn against you, and to cross-examine them.

10          You would have the right to remain silent or

11     to testify in your own behalf, but you couldn't be

12     compelled to incriminate yourself or to testify at all,

13     and your silence couldn't be held against you in any

14     way, nor could any inferences of guilt be drawn against

15     you if you decided not to testify.

16          You would have the right to use subpoena or

17     other processes of the Court to compel witnesses to

18     attend the trial and testify and to obtain any

19     documentary or other evidence you might wish to offer in

20     your own defense.

21          Now, if the Court accepts your plea of guilty

22     here this afternoon, you're going to waive, or give up,

23     all those rights, there won't be a trial of any kind,

24     and the Court will have the same power to sentence you

25     as if you had been found guilty after a trial on the

U.S. v DELANEY - 20-cr-335

1   counts to which you are pleading.

2          You told me a few moments ago that you talked

3   over the charges with Mr. Iseman and that he explained

4   them to you, and you understood them.  Was that true?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Did you also talk to him about the

7   potential sentences of the consequences of pleading

8   guilty?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you understand those?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Did you speak with him about your

13   chances of winning or losing if you went to trial, trial

14   strategy and defenses?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Okay.  Lastly, I want to advise

17   you that your plea of guilty constitutes a waiver or

18   giving up your right against self-incrimination, and I

19   want to warn you not to plead guilty unless you are in

20   fact guilty of the charges made against you in count one

21   through four of the indictment.

22         Do you still wish to plead guilty?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  All right.  John.

25         COURT CLERK:  Please stand.  In the indictment

                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

1    that was filed on October 29th, 2021, in the matter of

2    the United States of America versus Jacob Delaney, case

3    number 20-cr-335, the grand jury charges in count one,

4    receipt of child pornography.

5           In or about September 2018 through on or about

6    December 11th, 2019, in Ulster County, in the Northern

7    District of New York and elsewhere, the defendant, Jacob

8    Delaney, did knowingly receive child pornography using a

9    means and facility of interstate and foreign commerce,

10   shipped and transported in and affecting such commerce

11   by any means, including by computer, in that the

12   defendant did receive graphic image and video files

13   depicting one or more minors engaged in sexually

14   explicit conduct by use of the internet, in violation of

15   Title 18, United States Code, Sections 2252A(a)(2)(A)

16   and (b)(1).

17          How do you plead?  Guilty or not guilty?

18          THE DEFENDANT:  Guilty.

19          COURT CLERK:  As to counts two through four,

20   possession of child pornography, on or about

21   December 12th, 2019, in Ulster County, in the Northern

22   District of New York, the defendant, Jacob Delaney, did

23   knowingly possess material that contained one or more

24   images and videos of child pornography that had been

25   shipped and transported using a means and facility of

U.S. v DELANEY - 20-cr-335

1    interstate and foreign commerce and in and affecting

2    such commerce by any means, including by computer, and

3    that was produced using materials that had been

4    transported in and affecting such commerce by any means,

5    including by computer, that is, the electronic media

6    described below, which contained numerous graphic images

7    and videos of minors engaged in sexually explicit

8    conduct, in violation of Title 18, United States Code,

9    Sections 2252A(a)(5)(B).

10           Count two, a Dell laptop computer bearing

11   serial number FN47R32, manufactured in China, and

12   containing a Samsung SSD, bearing serial number

13   S1D2NYAG403787.

14           Count three, KESU 120 gigabyte hard drive,

15   made in China; and count four, Sandisk Cruzer flash

16   drive bearing serial number BL11020HYB, made in China.

17           These violations involved images and videos of

18   child pornography involving prepubescent minors and

19   minors who had not attained 12 years of age, in

20   violation of Title 18, United States Code, Section

21   2252A(b)(2).

22           How do you plead?  Guilty or not guilty?

23           THE DEFENDANT:  Guilty.

24           COURT CLERK:  And as to the forfeiture

25   allegation, the allegations contained in counts one

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   through four of this indictment are hereby realleged and

2   incorporated by reference herein for the purposes of

3   alleging forfeiture pursuant to the provisions of Title 18,

4   United States Code, Section 2253, pursuant to the Title

5   18, United States Code, Section 2253, upon conviction of

6   any of the charges alleged in counts one through four of

7   this indictment, the defendant, Jacob Delaney, shall

8   forfeit to the United States of America any visual

9   depictions described in Title 18, United States Code,

10  Section 2251, 2251(a), 2252, 2252(a), 2252(b), and 2260,

11  and any book, magazine, periodical, films, videotape,

12  and other matter which contains any such visual

13  depiction which was produced, transported, mailed,

14  shipped and received, in violation of Chapter 110 of the

15  Title 18 of the United States Code, any property, real

16  and personal, constituting and traceable to gross

17  profits and other proceeds obtained from such offense,

18  and any profit, real and personal, used and intended to

19  be used to commit and to promote the commission of such

20  offense and any property traceable to such property.

21  The property to be forfeited includes but is not limited

22  to the following:

23          A Dell laptop computer, bearing serial number

24  FN47R32, a Samsung SSD, bearing serial number

25  S1D2NYAG403787, a Kesu 120 gigabyte hard drive, and a

U.S. v DELANEY - 20-cr-335

```
1    Sandisk Cruzer flash drive, bearing serial number
2    BL11020HYB, do you admit to the forfeiture allegation?
3                THE DEFENDANT:  Yes.
4                COURT CLERK:  Thank you.
5                THE COURT:  All right.  You may be seated now.
6    A few moments ago I asked you your name, your age, your
7    date of birth, about your marital status, your family,
8    your educational background, what you did for a living,
9    and were you under the care and treatment of any medical
10   care provider and taking any medication, if it affected
11   your ability to understand the charge and the
12   consequences, did you have counsel, and did he explain
13   the charges to you.
14                If I asked you all those same questions again,
15   would you give me the same answers?
16                THE DEFENDANT:  Yes, your Honor.
17                THE COURT:  Has Mr. Iseman advised you of your
18   rights in this case?
19                THE DEFENDANT:  Yes, your Honor.
20                THE COURT:  Is there anything you'd like to
21   ask me about your rights today?
22                THE DEFENDANT:  No, your Honor.
23                THE COURT:  Are you satisfied with what
24   Mr. Iseman has done for you so far?
25                THE DEFENDANT:  Yes, your Honor.
```

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1           THE COURT:  Has Mr. Iseman or Ms. Powers or

2    any public official or anyone made any promises to you

3    that you would be treated leniently in exchange for your

4    plea of guilty?

5           THE DEFENDANT:  No, your Honor.

6           THE COURT:  Has anyone threatened you with the

7    use of force to induce to you plead guilty?

8           THE DEFENDANT:  No, your Honor.

9           THE COURT:  Are you pleading guilty freely and

10   voluntarily?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Are you currently on probation

13   from any other court or parole from any institution?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Okay.

16          Ms. Powers, does the government have

17   sufficient evidence to prove the Mr. Delaney guilty

18   beyond a reasonable doubt of the charges and counts one

19   through four?

20          MS. POWERS:  Yes, your Honor.  The government

21   would have to prove a number of things with respect to

22   each count.

23          With respect to count one, receipt of child

24   pornography, the government would have to show that the

25   defendant knowingly received a visual depiction.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    Second, the government would have to show that the

2    visual depiction was received or transported using a

3    means or facility of interstate or foreign commerce or

4    in and affecting such commerce by any means, including

5    computer.

6         Third, the government would have to show that

7    the visual depiction was child pornography and, last,

8    that the defendant knew of the sexually explicit nature

9    of the visual depiction and that the visual depiction

10   was of an actual minor engaged in sexually explicit

11   conduct.

12        As to counts two, three and four, possession

13   of child pornography, the government would have to

14   prove, first, that the defendant knowing possessed

15   material that contains one or more visual depictions

16   that are child pornography.  Two, that the visual

17   depictions have been mailed or shipped or transported

18   using a means or facility of interstate commerce or

19   foreign commerce or in and affecting such commerce by

20   any means, including by computer, or produced using

21   materials that had been shipped or transported in and

22   affecting such commerce by any means, including by

23   computer.

24        Third, that the defendant knew of the sexually

25   explicit nature of the visual depictions and the visual

—————————U.S. v DELANEY - 20-cr-335—————————

1    depictions were of an actual minor or minors engaged in

2    sexually explicit conduct.

3           And, finally, that the visual depictions of

4    child pornography possessed by defendant involved

5    prepubescent minors and minors who had not attained

6    12 years of age.  These elements are set forth at --

7    starting on paragraph 4 at page 5 of the plea agreement.

8           The government would prove those elements that

9    I just read through a combination of different kinds of

10   evidence and would show them beyond a reasonable doubt.

11   Specifically, that between about September 2018 and

12   December 12th, 2019, the defendant resided in New Paltz,

13   New York, which is located in the Northern District of

14   New York.

15          The government would also show through the

16   evidence that on December 12th, 2019, the defendant

17   cumulatively possessed over 10,000 image files and

18   between about 150 and 200 video files of child

19   pornography on numerous electronic devices as listed in

20   counts two, three and four of the indictment.

21          None of these devices were manufactured in the

22   state of New York, and all of them were seized from the

23   defendant's New Paltz residence by law enforcement

24   pursuant to a federal search warrant signed on

25   December 10th, 2019.


                 Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1       Pardon me, my phone was buzzing; I want to

2   turn it off so it's not bothering anyone.  I apologize.

3       They were all seized pursuant to a federal

4   search warrant signed by the Honorable Daniel J.

5   Stewart, United States Magistrate Judge; that warrant

6   was signed December 10th, 2019.

7       As to count one of the indictment, from on or

8   about September of 2018 through on or about

9   December 11th, 2019, the evidence would show that the

10  defendant used a Dell laptop computer, bearing serial

11  number FN47R32, which contained a Samsung SSD, bearing

12  serial number S1D2NYA403787, to search for and knowing

13  receive images and videos of child pornography from the

14  internet, including a video file named ten-year-old

15  Jonas's sexy show MP4, which depicted lascivious

16  depictions of the genitals of a boy approximately ten

17  years old, who is depicted showing his naked penis to

18  the camera and then playing with his penis.  This file

19  was later recovered from the defendant's computer.

20      As to counts two, three and four of the

21  indictment, the evidence would show that the defendant

22  possessed numerous graphic image and video files

23  containing child pornography on each of the three

24  devices specified.  This is a -- what I'll describe as a

25  sampling of the child pornography files possessed by the

────────────U.S. v DELANEY - 20-cr-335────────────

1   defendant on December 12th, 2019.

2           On a Dell laptop, bearing serial number

3   FN47R3, manufactured in China and containing Samsung

4   SSD, which has already been described and is set forth

5   in the forfeiture allegation, the defendant possessed

6   numerous files, including an image file which depicts an

7   image of a minor male lying naked on a bed with his legs

8   spread apart with a black object inserted into his anus,

9   and an image file which depicts an image of three

10  prepubescent children sitting on a couch, all three are

11  nude; a male is sitting in the middle of two females,

12  the females are touching the male's penis with their

13  fingers while the males touching each girl's vaginal

14  area with his hand.

15          There are specific image file names associated

16  with those two that are set forth at page 8 of the plea

17  agreement.

18          The evidence would also show that on a -- that

19  KESU 120 gigabyte hard drive, manufactured in China, the

20  defendant possessed numerous files, including a video

21  file which is a video depicting a young male inserting a

22  wooden object into his anus, and another image file

23  which contains an image of a prepubescent male anally

24  penetrating another prepubescent male.

25          The evidence would show also that on a Sandisk

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   Cruzer flash drive that's described in the forfeiture

2   allegation the defendant possessed approximately 68

3   video files depicting minors engaged in sexually

4   explicit conduct.

5         The evidence would also show that the Dell

6   laptop that's described in the forfeiture allegation and

7   previously described above, as well as the KESU 120

8   gigabyte hard drive and Sandisk Cruzer flash drive

9   already described were used to facilitate the offenses

10  of conviction, and that the defendant used those devices

11  to receive and possess child pornography as charged in

12  the indictment, and the defendant is the owner of those

13  described electronic devices.

14         THE COURT:  All right, Mr. Delaney, did you

15  hear and understand what Ms. Powers said about what you

16  did in this case?

17         THE DEFENDANT:  Yes, yes, your Honor.

18         THE COURT:  Is that what you did?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Is that your understanding,

21  Mr. Iseman?

22         MR. ISEMAN:  Yes, it is, your Honor.

23         THE COURT:  All right.  Ms. Powers, would you

24  please advise Mr. Delaney and the Court what the maximum

25  penalties would be for the counts involved.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1          MS. POWERS:  Yes, your Honor.  The potential

2    maximum penalties are set forth at paragraph 3 of the

3    plea agreement, which starts at page 4 -- for count one,

4    the potential maximum -- I'm sorry.  The maximum term of

5    imprisonment is 20 years.  For counts two, three and

6    four, there's a maximum term of imprisonment of 20 years

7    as well.  For count one, there's also a mandatory

8    minimum term of imprisonment of five years.

9          There's a maximum fine of $250,000 per count.

10   There's also a number of other things that I'll now

11   describe.  First of all, in addition to imposing any

12   other penalty, the sentencing court must require the

13   defendant to serve a term of supervised release of

14   between five years and life to begin after imprisonment.

15          Violation of the conditions of supervised

16   release during that time period may result in additional

17   term of imprisonment of up to three years.

18          The defendant must require [sic] as a sex

19   offender under paragraph 3-E.  There are additional

20   adverse consequences associated with pleading guilty

21   which are set forth in more detail at paragraph F of the

22   plea agreement.  These include potential loss of the

23   right to bear arms or vote or hold certain professional

24   licenses.

25          There are also financial consequences and

1    forfeiture consequences associated with the conviction

2    for the offenses charged.  First of all, there's a

3    special assessment of $100 per count, for a total of

4    $400.  There's also an additional special assessment of

5    $5,000 because this is a -- nature of the offense,

6    that's pursuant to Title 18, United States Code,

7    Section 3014(a).

8            There's also restitution required.  That is

9    detailed more specifically at paragraph 1(e), set forth

10   at page 2.

11           With respect to counts two and four, there's a

12   restitution to be determined by the Court for the full

13   amount of the victims' losses that were incurred or

14   reasonably projected to be incurred in an amount that

15   reflects the defendant's relative role in the causal

16   process that underlies the victims' losses and no less

17   than $3,000.  There's more about what that means

18   spanning page 2 and 3 of the plea agreement.

19           There's also a child pornography assessment of

20   $17,000 per count for counts two through four, that's

21   set forth at one -- at page 3.  And, last, there are

22   forfeiture consequences.  Pursuant to this plea

23   agreement, the defendant is going to consent to an order

24   of forfeiture of the property described in the

25   forfeiture allegations.  Specifically, the Dell laptop

U.S. v DELANEY - 20-cr-335

1    described, a Samsung SSD, the KESU 120 gigabyte hard

2    drive and the Sandisk Cruzer flash drive; those specific

3    identifying numbers are set forth at pages 4.

4         The defendant also will consent to forfeiture

5    of individual depiction described in chapter 110 of

6    Title 18, United States Code, and any property, real and

7    property, traceable to gross profits and other proceeds

8    obtained from the offense, and any other property used

9    to commit and promote the commission of the offense and

10   property traceable to such property.

11        THE COURT:  All right.

12        MS. POWERS:  I think I got everything.

13        THE COURT:  Mr. Delaney, in addition to what

14   Ms. Powers just iterated about your sentence, Court must

15   also advise you that under and pursuant to certain

16   sentencing guidelines adopted by the United States that

17   used to be mandatory but are no longer mandatory but

18   still must be considered by the Court in the sentencing

19   process, that my discretion in sentencing you is thereby

20   affected, and the Court must enforce the law as it

21   stands today.

22        But sometimes the Court can sentence you above

23   the guidelines or below the guidelines or even outside

24   of the guidelines, depending upon the facts the

25   circumstances and the law presented to the Court at or

U.S. v DELANEY - 20-cr-335

1    about the time of sentencing.

2            So do you understand what I just said about

3    the sentencing guidelines?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Okay.  Ms. Powers, have you done a

6    preliminary guideline calculation?

7            MS. POWERS:  Yes, the government has,

8    your Honor.  Would you like me to go through it now?

9            THE COURT:  Please.

10           MS. POWERS:  There are some sentencing

11   stipulations in the plea agreement, which I'll walk

12   through as well.  The first I'll just say that the

13   government estimates first that the defendant falls into

14   criminal history category of I, that the base offense

15   level here pursuant to sentencing guideline Section

16   2G2.2(a)(2) combined with 2G2.2(b)(1) is 20.  There are

17   several enhancements that the parties agree to set forth

18   at paragraph 6, at page 9.

19           Those include, first, a two-level increase

20   pursuant to 2G2.2(b)(2) because the offenses involved a

21   prepubescent minor or minor who had not attained the age

22   of 12, that there's a four-level enhancement pursuant to

23   because material -- the offense involved material that

24   portrays sadistic or masochistic conduct or other

25   depictions of violence.  There's also under 2G2.2(b)(6)

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    a two-level increase because the offenses involved the

2    use of a computer or an interactive computer service.

3    And then the last enhancement is a five-level increase

4    pursuant to 2G2.2(b)(7) because the offenses involved

5    600 or more images.

6            So that leads to a guideline range before

7    acceptance of responsibility of between 135 and

8    168 months imprisonment.  However, if the defendant --

9    defendant's pleading guilty today and if he remain

10   cooperative through the time of sentencing, the

11   government would move for a three-level downward

12   departure, which would lead to an estimated guideline

13   range of between 97 and 121 months in prison.

14           THE COURT:  All right.  Mr. Delaney, did you

15   sign your plea agreement in this case?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Did you talk it over with

18   Mr. Iseman before you signed it?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Did he explain it to you?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Did you understand it when you

23   signed it?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Did you sign it freely and

U.S. v DELANEY - 20-cr-335

1   voluntarily?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  All right.  In your plea

4   agreement, on page 10, paragraph 7 you've indicated to

5   the Court that after consultation with counsel both you

6   and he feel it would be in your best interest to waive,

7   or give up, certain appeal rights, and those are as

8   follows:

9              The right to appeal or collaterally attack

10  your conviction resulting from your guilty plea today,

11  the right to appeal or collaterally attack any claim

12  that the statute to which you're pleading guilty are

13  unconstitutional, the right to appeal or collaterally

14  attack any claim that your admitted conduct does not

15  fall within the scope of the statutes, the right to

16  appeal or collaterally attack any sentence to a term of

17  imprisonment of 168 months or less, the right to appeal

18  or collaterally attack any sentence to a fine within the

19  maximum permitted by law, or any sentence to a term of

20  supervised release within the maximum permitted by law,

21  or any order of forfeiture or restitution imposed by the

22  Court that is consistent with governing law and is not

23  contrary to the terms of your plea agreement.

24              Did you understand what you were doing when

25  you agreed to give up those appeal rights?

                    Lisa L. Tennyson, CSR, RMR, FCRR
                  UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And did you do that voluntarily?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Mr. Iseman, did you sign on behalf

5    of Mr. Delaney knowingly and voluntarily?

6          MR. ISEMAN:  I did, your Honor.

7          THE COURT:  And, Ms. Powers, did you sign on

8    behalf of the government?

9          MS. POWERS:  Yes, your Honor.

10          THE COURT:  All right.  Mr. Delaney, Court

11   also has to advise you that it's not bound by any

12   sentencing recommendation contained in the plea

13   agreement.  You will have no right to withdraw your plea

14   of guilty if the Court decides not to accept any

15   non-binding recommendation.

16          The Court will of course defer or put off its

17   decision to reject or accept any recommendation until I

18   have seen the presentence investigation report and any

19   other materials that are sent to me that bear on

20   sentencing in that connection.

21          So do you understand what I just said about

22   the Court's ability to reject any non-binding

23   recommendation contained in the plea agreement?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  All right.  Now that you have

1    heard about the potential statutory sentence and the

2    guidelines, do you still wish to plead guilty?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  And are you pleading guilty

5    because you are guilty?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Mr. Iseman, would you state your

8    background and experience in handling matters of this

9    kind.

10           MR. ISEMAN:  Yes, your Honor.  I have been

11   admitted to the New York State bar for ten years.

12   Before that, before I entered private practice, I was a

13   prosecutor in the United States Marine Corps where I

14   handled a number of child pornography offenses.  I also

15   a special assistant United States Attorney in Eastern

16   District of North Carolina, where I prosecuted these

17   offenses in federal court as well.

18           Since then, I've returned home, I've been in

19   the Northern District of New York, admitted to this bar

20   since 2014, and many of these cases before the court.

21           THE COURT:  All right.  Approximately how much

22   time have you spent so far defending Mr. Delaney in this

23   case?

24           MR. ISEMAN:  I have excess of 50 hours, your

25   Honor.

U.S. v DELANEY - 20-cr-335

1          THE COURT:  Have you had what you believe to
2   believe adequate discovery of the government's case?
3          MR. ISEMAN:  Yes.
4          THE COURT:  Have you advised Mr. Delaney of
5   his rights, the nature of the charges and the
6   consequences of pleading guilty?
7          MR. ISEMAN:  Yes.
8          THE COURT:  Except what's in the plea
9   agreement, have you made any promises or threats to
10   induce him to plead guilty?
11          MR. ISEMAN:  No, your Honor.
12          THE COURT:  Are you satisfied that he's
13   pleading guilty freely and voluntarily with an
14   understanding of the charges and the consequences?
15          MR. ISEMAN:  Yes, your Honor.
16          THE COURT:  Can you state any reason why he
17   should not plead guilty?
18          MR. ISEMAN:  No, your Honor.
19          THE COURT:  All right.  Based on the
20   foregoing, the Court will find that Mr. Delaney pled
21   guilty freely and voluntarily, that he is and was
22   competent to enter such a plea, that he understands the
23   charges against him and the consequences of pleading
24   guilty, that there is and was a basis in fact for the
25   Court taking and entering your plea of guilty.

                Lisa L. Tennyson, CSR, RMR, FCRR
                UNITED STATES DISTRICT COURT - NDNY

━━━━U.S. v DELANEY - 20-cr-335━━━━

```
 1              Court will direct the probation department to
 2    prepare and submit a presentence report.  Court will set
 3    sentencing for February 15th, 2022, at 11:30 a.m. in
 4    Albany, New York, and the defendant will be remanded
 5    until sentencing is arrived at.
 6              Is there anything further from the government?
 7              MS. POWERS:  I do just want to note this is a
 8    somewhat unusual plea agreement in the sense that it
 9    arises under Federal Rule of Criminal Procedure 1182,
10    and there are certain appeal rights that are preserved
11    by the defendant, they're set forth at page 11.
12              THE COURT:  Okay.  How about from you,
13    Mr. Iseman?
14              MR. ISEMAN:  Well, your Honor, I'd like to be
15    heard on the issue of remand before we get there.
16              THE COURT:  I'm sorry?
17              MR. ISEMAN:  I'd like to be heard on the issue
18    of his release pending sentencing.
19              THE COURT:  Let me see you at sidebar for a
20    minutes.
21              (Discussion held at sidebar.)
22              THE COURT:  Earlier today the probation
23    department came up and talked about me.  Mr. Delaney
24    said that he's threatened suicide on more than one
25    occasion, and they're worried about him walking around
```

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   waiting to be sentenced he might hurt himself, and

2   that's basically the reason for remand.

3           The statute tells me I have to remand people

4   but I don't usually remand them.  Usually I wait until

5   sentencing.  But in this case, I'm trying to save his

6   life, so that's why I ordered remand.

7           MR. ISEMAN:  I understand, Judge, and I know

8   what the Court is trying to do.  Respectfully, I think

9   that he can get the best help for himself is where he's

10  home with his parents, and he's seeing a counselor, he's

11  under medication.  This suicidal ideations is not new,

12  this happened months ago, and he didn't do anything to

13  act upon it.  He just expressed it to a counselor.

14          THE COURT:  If he did, then he wouldn't be

15  here to take the plea.

16          MR. ISEMAN:  Not necessarily, there's --

17  there's all sorts of people can do it successfully or

18  partial attempt.

19          THE COURT:  That's true.

20          MR. ISEMAN:  Half measures here.  There's no

21  action on his part.  He's expressed something to a

22  counselor.  That's it.  And, respectfully, Rensselaer

23  County Jail or Albany County Jail is not a place for

24  someone to stay safe from themselves rather than the

25  home where he can get mental health care.  And up until

U.S. v DELANEY - 20-cr-335

1    about five minutes before today, the government's
2    position was that he -- that they were not going to be
3    seeking remand.  I understand that you have -- the
4    government hasn't stated.
5              THE COURT:  The government didn't talk to me
6    about that.
7              MR. ISEMAN:  I understand that, your Honor.
8    But, up until they --
9              THE COURT:  Yes, that's what you --
10             MR. ISEMAN:  -- up until --
11             THE COURT:  That's what you've been telling
12   your client.
13             MR. ISEMAN:  That's what I've been telling
14   him, but I told him what the standard is and that
15   there's a possibility of it.  Okay?  But, respectfully,
16   Judge, he -- his -- he articulated a concern about the
17   way he was feeling under the circumstances, which is --
18   he hasn't acted on.  He's getting mental health, he's
19   home, he's abided by these conditions and lived with
20   this for almost two years right now.
21             THE COURT:  Is he taking insulin every day?
22             MR. ISMAN:  I'm sorry?
23             THE COURT:  Does he take insulin?
24             MR. ISEMAN:  Not insulin, he has Lexapro and
25   Adderall.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

─────────U.S. v DELANEY - 20-cr-335─────────

1      THE COURT:  Okay.  That's keeping him

2  injected.

3      MR. ISEMAN:  It helps his -- manages his

4  anxiety about what he's facing.  Additionally, he has

5  something to fight for.  This is a conditional plea.  I

6  know that the Court -- obviously wouldn't be here if the

7  Court agreed with my motion.  But I think the Court

8  acknowledges that we have some merit -- not meritorious,

9  but we have something to talk about on appeal,

10  otherwise, we wouldn't be in a conditional plea

11  situation.

12      So this young man isn't a foregone conclusion

13  that's just going to flush his life down the toilet if

14  he goes home.  He has no prior criminal history, he

15  voluntarily appeared here today with his family.  His

16  family are right in back, Tom and Tina.  They are going

17  to take good care of him.  The best place for him is

18  home with his -- where he can get mental health care,

19  not in Albany County Jail.

20      THE COURT:  Well, I think you're right about

21  Albany County Jail.  It's not the best place in the

22  world for healthcare but, once again, I'm just afraid

23  he's going to do something, and if I let him go until

24  sentencing and he does something, it's on my head.  I

25  really don't want to take that kind of a risk.

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1          MR. ISEMAN:  Judge, respectfully, people do
2   this to themselves in jail all the time.  It's no
3   guarantee.  I mean, locking a guy up in jail is no
4   guarantee they are not going to try hurt themselves.
5          THE COURT:  No, it's no guarantee.  People do
6   it.
7          MR. ISEMAN:  The best place for him is where
8   he can get professional medical care with a trusted
9   mental health provider and the support of his family at
10   home.  That's the best place for him.
11          THE COURT:  What do you say about that?
12          MS. POWERS:  I mean, I think I share the
13   Court's concerns.  You know, my understanding had been
14   from Rick Belliss, who was up until -- he heard from
15   probation earlier, he had been on the fence, and it's
16   hard for me covering that now to say whether there's a --
17   where there's a concern someone will take their life,
18   especially with a plea behind them, that we shouldn't
19   exercise care to make sure we do everything that can be
20   done to preserve their life.
21          So, all of that is to say the concerns about
22   non-appearance and danger to him are strong for the
23   government.
24          THE COURT:  Well, I don't have any authority
25   to say where he's going to be held between now and

1   sentencing if I remand him.  They could put him anyplace

2   they want to put him.  Probably would be a local jail.

3          MR. ISEMAN:  The contract is for Rensselaer

4   County or Albany.  I think it's just for Albany right

5   now.  But I'm just saying anecdotally I don't know for

6   sure.  But neither place is going to receive, you know,

7   good mental health care which is --

8          THE COURT:  He won't.

9          MR. ISEMAN:  -- which is what he needs right

10  now.

11         THE COURT:  I can recommend of course at

12  sentencing that he be placed in a institution where he

13  can get mental health care, and there are several around

14  the country.

15         MR. ISEMAN:  Yes, your Honor.

16         THE COURT:  Not all of them do that.  Well,

17  I'm -- I think I agree with you.  I will let him go.

18         MR. ISEMAN:  Thank you, Judge.

19         THE COURT:  I'm telling you, it's a chance I'm

20  taking I don't want to take.

21         MR. ISEMAN:  It's on me, too.  It's on me,

22  too.  Believe me, that is what -- this is what -- I

23  wouldn't be doing it otherwise and --

24         THE COURT:  No, I understand.

25         MR. ISEMAN:  He's going to be in a place with

1   his family, he's lived with this a long time.  I think

2   the risk is minimal right now.  He's talking to a

3   therapist.

4           THE COURT:  I hope so.  Okay.  Well.

5           MR. ISEMAN:  Thank you, Judge.

6           THE COURT:  On the record, the Court will

7   withdraw its order to remand the defendant, order that

8   he show up for sentencing as stated by the Court and be --

9   stay at home between now and then, under the care and

10  treatment of his parents, as he's done in the past.  My

11  understanding is he's done pretty well up until this

12  point on supervised release.  So --

13          MS. POWERS:  Would it be unreasonable that he

14  increase his treatment -- increase the frequency of his

15  treatment?

16          THE COURT:  Sure.  If any more treatment he

17  can get, is a big help.  Is there any possibility of

18  that?

19          MR. ISEMAN:  Sure.  We can do that.  We can

20  coordinate with it pretrial services or probation, your

21  Honor.

22          THE COURT:  All right.  Why don't you try to

23  figure out what you can do and let me know and -- that

24  will it be a -- accompanying him going home now.  Okay.

25  Thanks.


                Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY

U.S. v DELANEY - 20-cr-335

 1              MR. ISEMAN:  Thank you, Judge.

 2              THE COURT:  Court stands adjourned.

 3              (Held in open court)

 4              THE COURT:  Court stands adjourned in this

 5    matter.  Do you have terms and conditions of release?

 6              (Pause in proceeding.)

 7              THE COURT:  After speaking with the probation

 8    department, the Court orders that the defendant be

 9    released on the same terms and conditions under which

10    he's currently serving and with the hopes that he will

11    do as well, he's as he's done so far on release, and the

12    Court believes that he will or I wouldn't release him.

13              Court stands adjourned.

14              MR. ISEMAN:  Thank you, Judge.

15              (Proceeding concluded.)

16                    * * * * * * * * *

17

18

19

20

21

22

23

24

25

———U.S. v DELANEY - 20-cr-335———

# C E R T I F I C A T I O N

I, Lisa L. Tennyson, RMR, CSR, CRR, Federal
Official Realtime Court Reporter, in and for the United
States District Court for the Northern District of New
York, do hereby certify that pursuant to Section 753,
Title 28, United States Code, that the foregoing is a
true and correct transcript of the stenographically
reported proceedings held in the above-entitled matter
and that the transcript page format is in conformance
with the regulations of the Judicial Conference of the
United States.

Lisa L. Tennyson, RMR, RPR, FCRR

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY