**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **v.**                                            **1:20-CR-335 (TJM)**

**JACOB DELANEY,**

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.    INTRODUCTION**

Defendant Jacob Delaney moves for an order compelling the government to provide to the defense a draft application for a Pen Register Trap and Trace Device ("PRTT") order potentially to have been placed onto Defendant's IP address at the start of the investigation in this case. Dkt. 96. The draft application for the PRTT order was sent to the Albany Division of the FBI in connection with FBI Special Agent Jessica Diggons' FD-1057 dated November 18, 2019. See Dkt. 46-5. Special Agent Diggons' November 18, 2019 FD-1057 was previously provided to the defendant under an uncontested protective order and, in support of his motion to suppress, the defendant filed this document under seal. See Dkt. 38; Dkt. 40; Dkt. 41; Dkt. 46-5. The FD-1057 provided to the defense did not include Enclosures 2 ("PRTT pony") and 3 ("Search warrant template"). See Dkt. 46-5. The government did not apply for a PRTT order for the

defendant's IP address.  See Dkt. 63, at 30; Dkt. 67, at 30;  Dkt. 97, at CM/ECF p. 4 (email communication from the prosecutor to defense counsel).  The government opposes the defendant's motion to produce the draft application for a PRTT order.  Dkt. 97.  The government also moves to seal Special Agent Diggons' November 18, 2019 FD-1057 that the government provided as an attachment to its opposition to defendant's motion to produce. Dkt. 98.  The defendant opposes this sealing request. Dkt. 100.

## II.   DISCUSSION

### a.  Motion to Produce

The Court presumes familiarity with its July 19, 2021 Decision and Order that denied the defendant's motion to suppress. See Dkt. 63 (Sealed Decision and Order); Dkt. 65 (Redacted Decision and Order).  On October 13, 2021, the defendant pled guilty, pursuant to a written conditional plea agreement, to one count of receiving child pornography and three counts of possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) & (a)(5)(B), respectively.  The defendant is scheduled to be sentenced on May 12, 2022.

The defendant contends that he believes that "the draft PRTT application is relevant to the issues that will be raised on appeal from the Court's denial of the defendant's motion to controvert the search warrant and for suppression of its fruits and is 'favorable' within the meaning of Brady and the Court's Rule 5(f) order (Dkt. 39) and is required to be produced under the Due Process Clause as well as Rule 16." Dkt. 96, at 2. In support of his motion, the defendant, with the permission of the government, references and quotes from relevant portions of the FD-1057.  In this regard, the defendant notes that

the FD-1057 showed that the defendant's IP address did not appear in government databases of IP addresses that had accessed child pornography sites, and quotes Special Agent Diggons stating that "[a] PRTT can be effective in determining whether Tor network traffic is coming from a residence." Dkt. 96 at 1. The defendant also cites to the Court's July 19, 2021 Decision and Order where it stated that "[t]he failure to seek a PRTT, which might have provided additional corroboration for the FLA's determination, gives the Court some pause in determining whether probable cause existed." Dkt. 63 at 30; Dkt. 65 at 30.[1] The defense contends that because 18 U.S.C. § 3122(b) says that an agent applying for a PRTT order must certify that the information likely to be obtained is relevant to an ongoing criminal investigation, "it is likely that the agent explained how the PRTT could reveal whether the Target was accessing the Tor network and other non-dark web [child pornography ("CP")] sites. In their applications, agents typically allege that CP users will continue to use the web to find more CP." Dkt. 96, at 2.

The government responds that the "PRTT pony" is a suggested application template for those agents who might seek a pen register trap and trace order, but that no such application was ever made in this case. *See* Dkt. 97 at 1; Dkt. 97 at CM/ECF p. 4 (email attachment). The government argues:

> While the cases cited by the defendant's attorneys in their motion suggest that the government is obligated to produce Brady information in connection with pre-trial suppression issues, none of the cases cited by the defense

---

[1] The Court notes that in the very next sentence the Court stated: "However, the absence of such evidence is not fatal to whether a substantial basis supported the conclusion that the subject IP address accessed the Target Website," Dkt. 63 at 30; Dkt. 65 at 30, and then proceeded to analyze whether the hearsay tip from the FLA provided a sufficient basis for Judge Stewart to deem reliable the FLA's determination that the subject IP address accessed the Target Website. Dkt. 63 at 30-33; Dkt. 65 at 30-33.

3

> hold that either (i) an unsigned pen register trap and trace application template in a case in which agents never actually sought a pen register trap and trace order, or (ii) an unsigned search warrant application template when the actual signed search warrant application was provided to the defense in the course of routine discovery, constitutes Brady material. Moreover, none of the cases cited by the defense hold that the government should be compelled to produce the requested materials.

*Id.* at 2.

## Analysis

The Court reviewed *in camera* the draft PRTT order application ("PRTT pony") enclosed with Special Agent Diggons' November 18, 2019 FD-1057. It is essentially what the government contends it is - a suggested application template for those agents who might seek a pen register trap and trace order. The PRTT pony does not mention the defendant, his IP address, or any action that the defendant might have taken. The PRTT pony describes the "Facts of Investigation" generically and describes these facts in terms nearly identical to, and in some instances verbatim with, how the underlying factual allegations were described in Special Agent Fallon's affidavit in support of the search warrant. See, e.g., Dkt. 63, at 4-8; Dkt. 65, at 4-8. Further, Fallon's affidavit provides allegations beyond what is asserted in the PRTT pony. Id. Thus, in this regard, the PRTT pony does not provide any information more favorable to the defendant than what was provided in the search warrant application.

The PRTT pony explains how "pen registers" and "tap and trace devices" work and the data that they capture. Although it could be presumed from this that the information received from a PRTT order could provide evidence that a target was accessing the Tor network or other non-dark web CP sites, the PRTT pony does not make any specific

allegation in this regard. It also does not make any allegation that CP users will continue to use the web to find more CP. Thus, in this regard, the PRTT pony does not provide any information more favorable to Defendant's suppression motion than was provided in Special Agent Fallon's affidavit in support of the search warrant.

Accordingly, the government was not required to produce this document under Brady, the Court's Rule 5(f) order, Rule 16, or in accordance with due process. Furthermore, as the government argues, the defendant has not cited authority for the proposition that the government must produce an unsigned pen register trap and trace application template in a case in which agents never actually sought a pen register trap and trace order. For these reasons, the defendant's motion for an order compelling the government to produce the PRTT pony enclosed with Special Agent Diggons' November 18, 2019 FD-1057 is denied.

### b. Motion to Seal

As indicated, the government moves to seal Special Agent Diggons' November 18, 2019 FD-1057 that the government attached to its opposition to the defendant's motion to produce. Dkt. 98. The government requests that the document be filed under seal pursuant to the Court's December 17, 2020 Protective Order, Dkt. 38, and contends that Agent Diggons' FD-1057 contains law enforcement sensitive information. Dkt. 98. In opposition, the defendant indicates that "[t]he target site ceased operating in June 2019, nearly three years ago. We have no reason to believe that the public filing of the memorandum could seriously jeopardize any continuing investigations." Dkt. 100, at 1.

**Analysis**

"The 'notion that the public should have access to the proceedings and documents of courts is integral to our system of government.'" United States v. Cohen, 366 F. Supp. 3d 612, 618 (S.D.N.Y. 2019) (quoting United States v. Erie County, 763 F.3d 235, 238–39 (2d Cir. 2014)).  "Accordingly, there is a presumptive right of access to judicial documents rooted in both common law and the First Amendment." In re Search Warrant Dated Nov. 5, 2021, No. 21MISC813ATSLC, 2021 WL 5830728, at *2 (S.D.N.Y. Dec. 7, 2021)(citing Erie County, 763 F.3d at 238–39).

> Under Second Circuit precedent, documents may be sealed in whole or in part where it "is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)). The "decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978).
>
> Within the Second Circuit, courts follow a three-step process for determining whether documents should be sealed in whole or in part. First, the Court must determine whether the item at issue is a "judicial document," that is, whether the item is "'relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).  Second, the Court "must determine the weight of that presumption [of access]," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. at 119.  Third, the Court must "balance competing considerations against" the weight of the presumption. Id. at 120.

Id.

Here, for purposes of the defendant's motion to produce, Special Agent Diggons' FD-1057 is a judicial document inasmuch as it is the basis for the defendant's motion to produce the PRTT template that accompanied it.  The FD-1057 is relevant to the Court's function in deciding the defendant's motion to produce.  Thus, the FD-1057 is entitled to a

6

presumption of access which can be overcome when "'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." Lugosch, 435 F.3d at 124.

Next, the Court must "determine the weight of the presumption." In doing so, a court is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on the continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (internal quotation marks and citation omitted). The Court must consider the "relevance of the document's specific contents to the nature of the proceeding and the degree to which access to the document would materially assist the public in understanding the issues before the court, and in evaluating the fairness and integrity of the court's proceedings." Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 139 (2d Cir. 2016)(cleaned up)(quoting Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 166–67 (2d Cir. 2013)). Here, the weight of the presumption of access is limited inasmuch as the FD-1057 does not describe the contents of the proposed PRTT template that accompanied it. Moreover, as indicated above, the defendant references and quotes from relevant portions of the FD-1057. See Dkt. 96. Thus, the public will not be deprived of the relevant portions of the FD-1057 by sealing, reducing the weight of the presumption of access.

Finally, the Court the must determine whether the presumption of access can be overcome when "'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." Lugosch, 435 F.3d at 124.   The defendant

received Agent Diggons' FD-1057 during discovery pursuant to an uncontested protective order, and the defendant filed the FD-1057 under seal in support of his motion for suppression asserting that sealing was proper under Lugosch.  See Dkt. 40;[2] Dkt. 41; Dkt. 46-5.  The existence of the protective order, by itself, is not enough for sealing. See Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2, No. 18CV1781PGGBCM, 2022 WL 715241, at *1 (S.D.N.Y. Mar. 10, 2022)("[I]t is well-settled that 'the mere existence of a confidentiality order' does not justify a sealing order.")(quoting Lugosch, 435 F.2d at 126); Scism v. City of Schenectady, No. 1:18-CV-672 (TWD), 2021 WL 4458819, at *4 (N.D.N.Y. Sept. 29, 2021)("[T]he existence of a protective order has no bearing on whether a Court may order a document sealed from public access under Lugosch."), aff'd sub nom., Scism v. Ferris, No. 21-2622-CV, 2022 WL 289314 (2d Cir. Feb. 1, 2022). However, the reason for the protective order - namely, to provide the defendant with sensitive government information without compromising ongoing criminal investigations,

---

[2]Defense counsel asserted:

> We represent the Defendant, Jacob Delaney, in the above matter. Today the Defendant is filing with the Court a motion to suppress evidence obtained from the search of his premises. On December 17, 2020 this Court signed a Protective Order over certain discoverable materials in this case. See ECF Doc. No. 38. The entirety of our argument in the Memorandum of Law, the vast majority of the facts referenced in my Attorney Declaration and all but one exhibit (Ex. "A" the Indictment) attached to my Declaration is (or references information) covered by this Protective Order.
>
> As a result, pursuant to that Order, Federal Rule of Criminal Procedure 49.1(e), Local Rule of Crime Procedure 49.2(b) and Lugosch Co. v. Pyramid of Onondaga County, 435 F.3d 110, 119-27, the Defendant moves to submit the entirety of his motion to suppress and all supporting exhibits under seal.

Dkt. 40.

see Dkt. 37 at 1-3[3] - goes to whether sealing of the FD-1057 is essential to preserving higher values and to the balancing of competing interests in issue here.

    The defendant maintains that he has no reason to believe that the public filing of the FD-1057 could "seriously jeopardize any continuing investigations" because the target website in issue here ceased operating in June 2019. Dkt. 100.  However, the FD-1057 was sent to the Albany Division FBI office in November 2019, which was after the target website ceased operating.  Yet the government contended, and the defendant did not contest, that a protective order was necessary to protect against dissemination of sensitive government information that could seriously jeopardize ongoing investigations. See Dkt. 37 at 1-3.  Further, the cessation of the operation of the Target Website, which was before the Albany Division FBI Office began investigating the defendant, did not prevent the prosecution of the defendant.   Thus, the fact that the Target Website ceased operating in June 2019 does not, by itself, indicate that public dissemination of the FD-1057 would not seriously jeopardize ongoing government investigations.  Moreover, the government asserts in its sealing motion that "Agent Diggons' FD-1057 contains law enforcement sensitive information." Dkt. 98.  The government also contends in an April

---

[3]("Discovery materials the government intends to produce pursuant to its discovery obligations under Federal Rule of Criminal Procedure 16 include law enforcement sensitive items related to the ongoing investigation of investigative targets suspected of engaging in online child sexual exploitation. The dissemination of the government's investigative materials, including search warrant affidavits, reports of investigation, witness statements, court orders, and seized electronic data, and the information contained therein, could seriously jeopardize those continuing investigations. . . .  This Motion and the proposed Protective Order is submitted for the purpose of ensuring that law enforcement sensitive information contained in discovery materials are not disseminated to third parties. For these reasons, the United States and Defendant Jacob Delaney request this Court to authorize the proposed Discovery Protective Order. The Defendant, Jacob Delaney, does not oppose this motion.")

12, 2022 email to defense counsel regarding producing the PRTT pony and the search warrant template referenced in Agent Diggons' FD-1057 that "after speaking with a CEOS trial attorney," the prosecutor was advised "that there are currently other" similar cases "pending litigation."  Dkt. 97, CM/ECF p. 4.

In light of the government's representations that Agent Diggons' FD-1057 contains law enforcement sensitive information and that other similar cases are pending, and given that the defendant has publicly referenced and quoted from relevant portions of Agent Diggons' FD-1057 in making his motion to compel, the balance of the competing interests do not weigh in favor of public disclosure of this document. See, e.g., United States v. Maxwell, No. 20-CR-330 (AJN), 2021 WL 1063239, at *2 (S.D.N.Y. Mar. 18, 2021)("Courts have noted that disclosing the details of the Government's efforts to obtain evidence will undoubtedly hamper the investigation, as the individuals and entities under investigation would be put on notice.")(internal quotation marks and citation omitted); id.  ("[T]he Government's interest in protecting an ongoing investigation from the 'danger of impairing law enforcement' may be a countervailing factor that outweighs the presumption of access.")(quoting Lugosch, 435 F.3d at 120).  Likewise, protection of law enforcement interests in ongoing investigations is recognized as a higher value warranting sealing. See Hillary v. Vill. of Potsdam, No. 7:12-CV-1669 GLS/DEP, 2015 WL 902930, at *3 (N.D.N.Y. Mar. 3, 2015) ("[S]ome law enforcement interests are routinely accepted as higher values and countervailing factors, including: the protection of law enforcement techniques and procedures; . . . [and] the protection of ongoing investigations in terms of preventing interference, flight, or other obstructionist activities.")(citations omitted).

Here, given the totality of the circumstances, the Court finds that the sealing of

10

Special Agent Diggons' November 18, 2019 FD-1057 is justified under Second Circuit precedent addressed to whether to seal a document. That sealing shall be under the terms of the protective order. See Dkt. 38.

### III.     CONCLUSION

For the reasons discussed above, the defendant's motion for an order compelling the government to produce for the defense the PRTT pony enclosed with Special Agent Diggons' November 18, 2019 FD-1057, Dkt. 96, is DENIED.  The government's motion to seal Special Agent Diggons' November 18, 2019 FD-1057 that the government provided as an attachment to its opposition to defendant's motion to produce, Dkt. 98, is GRANTED, and that document shall be filed under seal and shall remain sealed until otherwise ordered by this Court.

**IT IS SO ORDERED.**

Dated: May 10, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

11