```
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF NEW YORK

 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5                                    )
                                      ) CASE NO. 20-CR-335
 6                                    )
        vs.                           )
 7                                    )
     JACOB DELANEY,                   )
 8                                    )
                 Defendant.           )
 9   _____)
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HON. THOMAS J. MCAVOY**
**TUESDAY, JUNE 14, 2022**
**ALBANY, NEW YORK**

**FOR THE GOVERNMENT:**
   OFFICE OF THE UNITED STATES ATTORNEY
   By:  RICHARD D. BELLISS, AUSA
   445 Broadway, Room 218
   Albany, New York 12207-2924

**FOR THE DEFENDANT:**
   LAW OFFICE OF SCOTT ISEMAN
   By:  SCOTT W. ISEMAN, ESQ.
   125 High Rock Avenue, Suite 215-H
   Saratoga Springs, New York 12866

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**USA v. Delaney - 20-CR-335**

1                    (Open court.)

2            THE CLERK:  Good morning.  The date is Thursday,
3    May 12, 2022.  The time is 11:34 a.m.  We're here in the matter
4    of the United States of America versus Jacob Delaney, case No.
5    20-CR-335.  We're here for purposes of sentencing.  May we have
6    appearances for the record, please.
7            MR. BELLISS:  Good morning, Your Honor.  Rick Belliss
8    on behalf of the United States.
9            THE COURT:  Good morning, Mr. Belliss.
10           MR. ISEMAN:  Good morning, Your Honor.  Scott Iseman
11   on behalf of Jacob Delaney, who is in the courtroom at my left.
12           THE COURT:  Good morning, Mr. Iseman.  Good morning,
13   Mr. Delaney.
14           THE DEFENDANT:  Good morning.
15           THE COURT:  All right.  We're here for a sentencing.
16   So I want to hear from defense counsel, the government, and
17   Mr. Delaney on that topic before I issue my order.
18           So Mr. Iseman, why don't you tell me what I should do
19   in this case in your view.
20           MR. ISEMAN:  Yes, Your Honor.  Thank you.  I've
21   outlined in detail in our sentencing memorandum, Your Honor.  So
22   I won't belabor the points that I've made in detail there.  But
23   in our memorandum, we requested a mandatory minimum sentence of
24   five years for the various reasons that we set out.
25           Based upon the professional psychosexual analyses that

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

3

**USA v. Delaney - 20-CR-335**

1  were done, the treatment that Jacob has received during the
2  extensive period this case has been pending, demonstrate that
3  Jacob is really not a risk.  While he is receiving treatment,
4  he's been improving, and the analysis from the trained
5  professionals demonstrate that he's not a risk to re-offend.
6         What is also indicative from the guideline range is
7  that the guideline range here is really not a reliable basis for
8  an appropriate sentence.  I won't belabor the details.  That's
9  why we believe a mandatory minimum sentence is appropriate in
10 this case.  It's substantial, and it will send a deterrent
11 message to Jacob and to others and meet all the 3553 criteria.
12 So we're just asking that the Court impose the mandatory
13 minimum.
14         We also did raise specific issues with some of the
15 recommended terms and conditions of post release supervision,
16 Your Honor.  And I don't want -- those oftentimes are neglected
17 or not really addressed in these sentencing proceedings.  The
18 special condition 1 and special condition 3, we believe are
19 overly broad and vague for the reasons we articulated in our
20 sentencing memorandum.
21         And in addition, the sentencing guidelines default
22 position of a lifetime of registration -- I'm sorry, a lifetime
23 of supervision is just not applicable and doesn't have any
24 individualized assessment of the risk or need of this particular
25 case.  So that's why we recommended the ten years of supervised

1  release following his term of incarceration.

2           So for all those reasons, Your Honor, we ask that the
3  Court impose the mandatory minimum sentence.  We'd also ask that
4  the Court not impose any financial assessments or additional
5  fines because of Mr. Delaney's lack of financial resources and
6  his indigency.  His ability to obtain counsel and to meet and
7  come to an agreement with the victims in this case for
8  restitution comes because of his family's support, not because
9  of his own resources.  So we'd ask that the Court just impose
10 the mandatory minimum sentence here, Your Honor.

11          THE COURT:  Okay.  I think I'm fully apprised of your
12 position in this case.

13          What's the government's position here?

14          MR. BELLISS:  Your Honor, we'll rely on the
15 submissions provided to you in writing.

16          THE COURT:  Okay.  That wasn't very complicated.

17          Mr. Delaney, would you like to say anything before I
18 sentence you?  You don't have to, but certainly you're permitted
19 to.

20          THE DEFENDANT:  Thank you for giving me the chance to
21 speak today.

22          THE COURT:  Sure.

23          THE DEFENDANT:  In my letter that I wrote to you, I
24 said most of this, but I would just like to say it again because
25 I can't stress it enough.  So I'd like to apologize to the

**USA v. Delaney - 20-CR-335**

1  victims for affecting them with my action and causing them to go
2  through the hurt all over again.  I'd like to apologize to the
3  law enforcement, the government, and the Court for spending time
4  and resources because of my actions.  I'd also like to apologize
5  to my friends and family for causing them so much pain and
6  stress.
7         I'm very thankful for them, my parents, my family, for
8  sticking with me through this.  I'm grateful that the Court has
9  allowed me to be home today or through this process.  It allowed
10 me to get treatment as well as show that I'm not a risk to
11 re-offend or hurt anyone.
12        And I'd also like the Court to know that they can
13 trust me to follow any conditions it sets for bail pending
14 appeal or trust me to surrender to my designated BOP facility.
15 And once again, I'm very sorry to you and the victims and my
16 family.
17        THE COURT:  All right.  Thank you very much,
18 Mr. Delaney.
19        These cases are difficult, and I understand your
20 position and what you've articulated.  The Court certainly will
21 consider that in terms of my sentence I'm about to pronounce
22 upon you.
23        All right.  Well, the Court has received and
24 considered all of the pertinent information including, but not
25 limited, to the Presentence Investigation Report, the addendum

1  to that report, the plea agreement, the submissions by counsel,
2  and the 2021 edition of the Sentencing Guidelines Manual and the
3  factors outlined in US Code Section 3553(a).
4           The Court adopts the factual information and guideline
5  applications contained in the presentence report.  Court finds
6  the total offense level is a 30, the criminal history category
7  is a 1, and the guideline imprisonment range is 97 to 121
8  months.  As you point out, Mr. Iseman, there is a 60 mandatory
9  minimum statutory sentence in this case associated with Count 1.
10          The Court finds the sentence to be imposed is
11 sufficient but not greater than necessary to meet the goals of
12 sentencing outlined in the statute 18 US Code Section 3553(a)
13 including the need for the sentence to reflect the seriousness
14 of the offense involved, promote respect for the law and provide
15 just punishment for the offense, afford adequate deterrence to
16 criminal conduct, and to protect the public from further crimes
17 of the defendant.
18          In determining the appropriate sentence, the Court has
19 considered various factors including the history of the
20 defendant and characteristics of the defendant, and the nature
21 and circumstances of the offense, which include the defendant
22 possessing over 10,000 still images and approximately 150 to 200
23 video files that depict children engaged in sexually explicit
24 conduct on your multiple electronic devices.  Much of the
25 material possessed by you depicted prepubescent minors engaged

1  in sadistic or masochistic conduct.  The Court has also

2  considered your history of alcohol and marijuana use in addition

3  to your lack of criminal history in determining the appropriate

4  sentence.

5  So upon your plea of guilty to Counts 1, 2, 3, and 4

6  of the indictment, it is the judgment of this Court that you're

7  hereby committed to the custody of the Bureau of Prisons for a

8  period of 78 months on each of Counts 1, 2, 3, and 4, to run

9  concurrently for a total term of 78 months.  Court recommends

10  you participate in the sex offender treatment program while in

11  Bureau of Prisons custody.

12  Upon your release from imprisonment, you shall be

13  placed on supervised release for a period of ten years on each

14  count, to run concurrently.  While on supervised release, you

15  shall not commit another federal, state, or local crime, and

16  shall comply with the standard conditions that have been adopted

17  by this Court and the following special conditions that have

18  been attached to the Presentence Investigation Report in advance

19  of sentencing.

20  So Mr. Iseman, did you want me to read the conditions?

21  MR. ISEMAN:  Is the Court just imposing the

22  recommended conditions, Your Honor, that's attached to the

23  sentencing memorandum -- I'm sorry, to the Pretrial Services

24  report?

25  THE COURT:  So you're thoroughly familiar with them?

1               MR. ISEMAN:  Yes, Your Honor.

2               THE COURT:  So you don't need a reading?

3               MR. ISEMAN:  If there's no changes to it, we don't

4      need a reading.

5               THE COURT:  How about the government's position,

6      Mr. Belliss?

7               MR. BELLISS:  No need to read, Your Honor.

8               THE COURT:  Okay.  So the Court will find there's been

9      a waiver of the reading of those provisions by both sides.  The

10     Court adopts the special conditions and makes them a part of the

11     record.  These special conditions are reasonably related to the

12     sentencing factors set forth in 18 US Code Section 3553(a)(1)

13     and (a)(2).  They involve no greater deprivation of liberty than

14     is reasonably necessary to implement the statutory purposes of

15     sentencing, and they're consistent with pertinent Sentencing

16     Commission policy statements.

17              Court further notes the conditions of supervised

18     release to be imposed are fluid and will be assessed both upon

19     your release from imprisonment and throughout the term of

20     supervised release and may be supplemented, modified, or removed

21     based upon risk and needs that the defendant presents.

22              The special conditions of supervision are necessary in

23     order to reasonably protect the public from further crimes of

24     the defendant and promote the rehabilitation of the defendant.

25     Based upon the nature of the instant offense, which includes the

1  use of electronic devices to receive and store child

2  pornography, Court finds the computer monitoring conditions to

3  be the least restrictive conditions necessary in lieu of a

4  complete internet ban to protect the public from further crimes

5  of the defendant.

6         Furthermore, due to advancing technology, the Court

7  notes it's unlikely upon your release, you will encounter

8  employment which does not somehow allow you access to a

9  computer.

10         Furthermore, as the offense involved prepubescent

11  minors, conditions 1, 2, and 3 are necessary to protect the

12  public from further crimes that you may commit.

13         Court finds based on your financial resources, that

14  you don't have the ability to pay a fine or the additional

15  special assessment outlined in 18 US Code Section 3014 and does

16  not order those.

17         The Court finds based on your financial resources that

18  you have the ability to pay restitution.  There have been four

19  requests for restitution in this case as set forth in the

20  addendum.  Court will order the minimum of $3,000 per victim.

21  Therefore, restitution in the total amount of $12,000 is due and

22  payable immediately with any remaining restitution payable at a

23  minimal rate of 25 percent of your gross income while

24  incarcerated and 10 percent of your gross income or $100 per

25  month, whichever is greater, following your release from

1   incarceration.  However, if at any time you have the ability to

2   make full or a substantial payment toward restitution, you must

3   do so immediately.  You shall begin payment of restitution while

4   in Bureau of Prisons custody.

5              Payments may be forwarded to US District Court Clerk,

6   Federal Building, PO Box 7367, 100 South Clinton Street,

7   Syracuse, New York, for transfer to the victims, $3,000 to each

8   of the victims identified as Jack, Ryan, Kauzie, and Solomon,

9   the addresses of which shall be included in the judgment.  The

10  interest requirement is waived pursuant to 18 US Code Section

11  3612(f).

12             Also you shall pay to the Clerk of the Court a special

13  assessment of $400, which is due and payable immediately.  You

14  shall consent to the entry of forfeiture to the items outlined

15  in the preliminary order of forfeiture and plea agreement.

16             Both you and the government have the right to appeal

17  this sentence.  You're advised to consult with counsel to

18  determine whether or not an appeal is warranted.  Any appeal you

19  take must be filed within 14 days of the date that the judgment

20  is filed in this case.  You've waived the right to appeal any

21  sentence of imprisonment of 168 months or less.

22             So you're remanded to the custody of the US Marshals

23  Service in accordance with the terms of this sentence.

24             There's nothing further to dismiss, Mr. Belliss?

25             MR. BELLISS:  No, Your Honor.  Just one clarifying

1   point on the restitution request for the four victims.  The
2   defense has worked out $3,000 settlements per victim.
3            THE COURT:  So you guys worked that out between
4   yourselves?
5            MR. BELLISS:  Yes, Your Honor.
6            THE COURT:  I did receive something to that effect.
7            MR. BELLISS:  Yes, Your Honor.  The other request
8   would be -- and I think this is a joint request of the
9   parties -- is that those restitution moneys be held by the
10  Clerk's Office until the appeal is resolved in this case.
11           THE COURT:  I did see that, and I think that's
12  perfectly appropriate.  So the Court will order that that
13  restitution payment be held by the Clerk of this Court until
14  things are decided by the Second Circuit.
15           MR. ISEMAN:  Thank you.
16           MR. BELLISS:  Thank you, Judge.
17           THE COURT:  Anything further from the government?
18           MR. BELLISS:  No, Your Honor.
19           THE COURT:  Defense counsel?
20           MR. ISEMAN:  Well, Your Honor, we did make a motion
21  for bail pending appeal.
22           THE COURT:  Yeah.  I read that, but I'm going to deny
23  that.  I've got a fairly long writing about that because I
24  seriously considered it.  I do that once in a while.  There's a
25  strong showing the defendant has to make pursuant to the law in

1    order for the Court to grant that.  How about if I make a record

2    of that, so it might be easier for you to raise that on appeal?

3            MR. ISEMAN:  That would be fine, Your Honor.  We can

4    address it at the appropriate time.  It doesn't do my client a

5    whole lot of good right now.  If there's any concerns that the

6    Court has, I'm happy to address them now if there's issues.

7            THE COURT:  I'm concerned that he's going to harm

8    himself.  That's my principal concern.  I don't think he's going

9    to go out and commit more crimes.  I really don't.  I think he's

10   sorry for what he did.  I think he understands that.  I think

11   he's got a purpose of amendment.  I don't think he's going to

12   look to do that conduct anymore.  So I'm not worried really

13   except what I said in the judgment about him harming further

14   members of the public.

15           I am worried about, because of his statements to

16   probation, as to what he might do because I've given him a

17   sentence of incarceration.

18           MR. ISEMAN:  Which I respect and appreciate, Your

19   Honor, because I know that the Court is looking out for the

20   welfare of Mr. Delaney when it takes that into consideration.

21           The one point I want to make though on that note is

22   the Court will remember at the time of the plea, the Court was

23   inclined to remand Mr. Delaney based on that finding as well and

24   the recommendation of Pretrial Services that Mr. Delaney should

25   be remanded following his plea because of his past suicidal

USA v. Delaney - 20-CR-335

13

**USA v. Delaney - 20-CR-335**

1  ideation that he had expressed, which was years ago at this
2  point. He's received mental health treatment. That is an old
3  and stale concern, I believe, regarding his concern about his
4  mental health status. He's receiving treatment. He's
5  progressing well in treatment, and he's with family, and he's
6  able to get the mental health treatment that he needs.
7  　　　　　We laid out in our sentencing memorandum what's going
8  to happen to Mr. Delaney after today, which is he'll be taken
9  into custody, go to probably Albany County jail, be isolated and
10  quarantined there, not receiving mental health treatment. And
11  then he's going to be sent down to MDC Brooklyn, isolated and
12  quarantined, not receiving mental health treatment. And then
13  he's going to have at least one more stop before he makes it to
14  his designated facility, which we have a recommendation for, by
15  the way. All this time, he's not getting mental health
16  treatment.
17  　　　　　Whereas on bail pending appeal where we have really
18  strong, legitimate appeal issues that we're pursuing and he's
19  not a threat to the public or to anyone else, he's receiving
20  mental health care, and his family is here.
21  　　　　　THE COURT: They're here to support him. The Court
22  understands that. That's a good thing.
23  　　　　　MR. ISEMAN: They're there to support him in the home.
24  He has been under house arrest under the supervision of Pretrial
25  Services for more than almost two and a half years without

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

1  incident. So if the Court is concerned about a mental health
2  issue, we respectfully submit that the best place for him to
3  continue to receive care is within the loving support of his
4  family, Pretrial Services, and trained mental health
5  professionals, and not this moving around of different
6  facilities where he's not going to receive anything and be
7  isolated and quarantined as he's moved around to different
8  facilities as he makes his way to his designated BOP facility.
9          So we ask that the Court grant bail pending appeal if
10 the Court agrees that there's legitimate legal issues, a
11 substantial question, which we do have, and he's not a risk to
12 the public. He's not doing this to delay. This is a legitimate
13 appeal issue we're raising.
14         THE COURT: Well, I grant that there are legal
15 questions that will be appropriate for the Appellate Court to
16 decide. I'm not going to say there aren't because there are.
17         But what I am going to do is remember what the
18 defendant said about his own conduct, the principal thing being,
19 if the Court sentenced me to a term of incarceration, I'm going
20 to take my own life. He said that more than once. So I just
21 can't ignore that.
22         I don't know how long you've been around, Mr. Iseman.
23 I've been around a heck of a long time, and I recall a case in
24 Syracuse where a defendant didn't have too much different
25 background than the defendant in this case, and for some reason,

**USA v. Delaney - 20-CR-335**

1  he killed a court librarian.  Do you remember that case?
2              MR. ISEMAN:  I don't remember.
3              THE COURT:  Well, that's 20 -- you probably don't
4  either remember that, Mr. Belliss.
5              MR. BELLISS:  I think I'm familiar with it, Judge.  I
6  don't remember the defendant's name.
7              THE COURT:  That was a shocking case, but it's like I
8  wouldn't hope that that would happen.  I don't believe it's
9  going to happen.  But if it did, I'm sitting here saying, guess
10 who caused that?  That would be me.  I'm not willing to take
11 that risk.  So I'm going to remand your client.
12             Court stands adjourned in this matter.
13                       (The matter adjourned at 11:54 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

16

**USA v. Delaney - 20-CR-335**

1        CERTIFICATION OF OFFICIAL REPORTER

2

3

4        I, JACQUELINE STROFFOLINO, RPR, CRR, Official Court

5   Reporter, in and for the United States District Court for the

6   Northern District of New York, do hereby certify that pursuant

7   to Section 753, Title 28, United States Code, that the foregoing

8   is a true and correct transcript of the stenographically

9   reported proceedings held in the above-entitled matter and that

10  the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12

13            Dated this 14th day of June, 2022.

14

15            **/s/ JACQUELINE STROFFOLINO**

16            JACQUELINE STROFFOLINO, RPR, CRR

17            FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*