**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**UNITED STATES OF AMERICA,**

          **v.**                               **1:20-CR-335 (TJM)**

**JACOB DELANEY,**

                      **Defendant.**
─────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION and ORDER**

## I.    INTRODUCTION

Defendant Jacob Delaney applied through appellate counsel "to unseal the documents that were filed in support of and opposition to the defendant's pretrial motions and those portions of the Court's decision (Dkt. 65) that was sealed for use in connection with the defendant's appeal to the Second Circuit."  Dkt. No. 116.  The government opposed the application in part, Dkt. No. 121, and the defendant filed a reply. Dkt. No. 122.  After reviewing the parties' papers, the Court granted the motion in part and reserved decision in part.  *See* Dkt. No. 125.   The Court ordered certain documents to be unsealed based on the government's concession that these documents no longer needed to be sealed,[1] and ordered the parties to address their arguments either for or against

─────────────────────

[1] The Court granted the motion to the extent that docket numbers 46-4 (Def. Ex. C, Charter Communications, Inc.'s subscriber information for the defendant's residence), 46-7 (Def. Ex. F, search warrant dated 12/10/2019 for the defendant's residence issued by Judge Stewart), and 51-4 (Gov. Ex. 3, the defendant's 12/12/2019 written *Miranda* waiver), were unsealed.

sealing the remaining documents and recordings under "the recognized three-step process under Second Circuit precedent for determining whether the documents or recordings should continue to be sealed in whole or in part." *Id.* at 10-11 (citation omitted). The Court also directed the parties to address "whether some lesser manner of sealing than currently exists could be narrowly tailored to preserve the common law and the First Amendment presumption of public access to judicial documents." *Id.* at 11 (citations omitted).  The government responded to this order on July 6, 2022, Dkt. No. 127, to which the defendant replied on July 7, 2022.  Dkt. No. 128.

## II.    BACKGROUND

The Court presumes familiarity with the background of this case as set forth in the Court's redacted Decision and Order (Dkt. No. 65) addressing the defendant's motion to suppress.  Suffice it to say that the search warrant was based upon information indicating that a user of the Internet account at the defendant's residence had been linked to an online community of individuals who regularly sent and received child pornography via a website that operated on the Tor anonymity network.  The information linking the Internet account user to a specific website in the Tor network (the "Target Website") came from a tip from a foreign law enforcement agency ("FLA") that "obtained its information through an independent investigation lawfully authorized in the FLA's country pursuant to its national laws." Dkt. No. 65 at 32.  The FLA was not publicly identified.  Further, the affidavit in support of the search warrant did not explain the specific technique that the FLA used to identify the subject IP address as having accessed the target website, but did indicate that the FLA has a long history of providing reliable information and is a known and respected

2

foreign law enforcement agency.  *See id.*

In this case, the government was granted protective orders covering the search warrant affidavit, *see* Dkt. No. 22, and covering certain discovery material provided by the government. *See* Dkt. No 38.  The reasons for seeking, and the bases for granting, the protective orders were that the information covered by the protective orders purportedly concerned sensitive law enforcement information related to ongoing investigations of investigative targets suspected of engaging in online child sexual exploitation, the dissemination of which the government asserted could seriously jeopardize those continuing investigations. *See* Dkt. No. 21; Dkt. No. 22, p. 3, ¶ 4; Dkt. No. 37 at 1-3;  Dkt. No. 38 at ¶¶ 1, 6.  The defendant did not object to or oppose the entry of either protective order. *See* Dkt. No. 21 at 2; Dkt. No. 37 at 6.

The protective order concerning the search warrant affidavit provides in pertinent part that the search warrant affidavit "shall be used solely by [defense  counsel and its litigation team] in connection with preparation of the defense including motions, trial, and, if necessary, sentencing and/or appeal in this matter and not for any other purpose."  Dkt. No, 22, p. 3, ¶ 1. This protective order further provides that the search warrant affidavit "shall not be duplicated, provided to, read verbatim to, or summarized for anyone else other than (a) the defendant, who may review in person with defense counsel, but not copy or retain copies of, all such information and items," *id*. ¶ 2, and that "Defense counsel shall return the search warrant affidavit to the United States Attorney's Office within 10 days upon conclusion of the case before this Court, or, if an appeal is taken, upon completion of such an appeal." *Id*. ¶ 3. This protective order also provides that "[t]he

search warrant affidavit, or information contained therein, that is filed with the Court in connection with pre-trial motions, trial, sentencing, or other matter before this Court, shall be filed under seal and shall remain sealed until otherwise ordered by this Court," *id*. ¶ 4, and that its provisions "shall not terminate at the conclusion of this prosecution." *Id*. ¶ 5.

The protective order governing discovery materials containing law enforcement sensitive information provides in pertinent part that "[t]he Defense attorneys of record and members of the defense team may display and review the Protected Materials produced in discovery with the Defendant," but prohibits the defense team from providing copies of the protected materials to the defendant or to any other person. Dkt. No. 38 at 2, ¶ 4. This protective order provides that "[a]ny Protected Materials produced in discovery, or information contained therein, that is filed with the Court in connection with pre-trial motions, trial, sentencing, or other matter before this Court, shall be filed under seal and shall remain sealed until otherwise ordered by this Court." *Id*. ¶ 6.  This protective order further provides that its provisions "shall not terminate at the conclusion of this prosecution," *id*. ¶ 7, and that "[a]ny Protected Materials produced in discovery pursuant to this Order shall be returned to the United States Attorney's Office, including all copies, within ten days of the completion of the case before the Court or, if an appeal is taken, within ten days of the completion of the case in the United States Court of Appeals for the Second Circuit or Supreme Court of the United States." *Id*. ¶ 9.

Because materials the Court considered on the suppression motion were covered by the protective orders, the Court issued its decision under seal and directed the parties

4

"to consult with each other and . . .  present to the Court a jointly-agreed upon proposed redacted Decision and Order that does not disclose information that might jeopardize the Government's continuing investigations but that also satisfies the governing legal standard for public access to court documents discussed in *Lugosch v. Pyramid Co. of Onondaga County*, 435 F.3d 110, 119-27 (2d Cir. 2006)." Dkt. No. 65 at 54.  This resulted in the redacted Decision and Order, Dkt. No. 65.

As defense counsel acknowledges, the defendant's trial counsel initially consented to the sealing of documents that were filed in support of and in opposition to the defendant's pretrial motions and those portions of the Court's decision that remained sealed (Dkt. No. 65). Dkt. No. 116.   But, the defendant argues, he now wants to have these materials unsealed. *Id.*

On the instant motion, the defendant initially argued that the government's previously articulated reason for sealing Special Agent Diggons' November 18, 2019 FD-1057 that the government attached to its opposition to the defendant's motion to produce, *see* Dkt. No. 98, and the Court's decision to continue its sealing, *see* Dkt. No. 104, were improper because, in the defendant's assessment, the government articulated only that there were pending prosecutions against other defendants and not that there were ongoing criminal investigations. *See* Dkt. No. 116 at 1-3.[2]  Although the defendant

---

[2]The defendant reached this assessment because, although the government requested that the document be filed under seal pursuant to the Court's December 17, 2020 Protective Order, and contended that Agent Diggons' FD-1057 contains law enforcement sensitive information, Dkt. No. 98, in its opposition to the defendant's motion for an order compelling the government to produce the enclosures to Agent Diggons' FD-1057 the government attached an email it sent to defense counsel stating in part: "After speaking with a CEOS trial attorney, I have been advised that there are currently other Project Jarvis cases pending litigation, and as such the government will continue to seek that certain matters remain sealed and/or redacted."  Dkt. No. 97, at CM/ECF p. 4.

did not raise the issue at the time, *see* Dkt. No. 100, at 1,[3] he initially contended:

> The government proffered reason for sealing is patently insufficient. The target site ceased operating in June 2019. The government does not contend there is any pending criminal investigation. They say, instead, that there is "pending litigation" which we take to mean DOJ has criminal prosecutions pending against other defendants. This is not a ground for the continued sealing of the materials in this case. The government has not and cannot demonstrate that public disclosure of an investigation that took place three years ago could unfairly prejudice the government in its efforts to prosecute pending criminal cases.

Dkt. 116 at 1-2.

However, and as discussed more fully below, the government contends that the law enforcement sensitive information in this case concerns ongoing investigations. *See* Dkt. No. 121; *see also* Dkt. No. 127 at 7 ("[A]s previously communicated to the Court, not only are there ongoing cases being prosecuted/litigated involving the website at issue, but there are ongoing *investigations* of subjects suspected of accessing the website at issue.")(emphasis in original).  Furthermore, the items the government seeks to continuing sealing, and to which the Court addresses its decision, includes Special Agent Diggons' November 18, 2019 FD-1057.  Thus, regardless of a prior ruling on this document, the present decision will control where, or to what extent, it is sealed.

The government asserts that the law enforcement sensitive information in this case generally falls into one or more of the following categories:

(i)    The name of the Foreign Law Enforcement Agency (FLA) providing information concerning the broader investigation and information specific to the defendant's case;

---

[3]In opposition to the government's application that Agent Diggons' FD-1057 be sealed, the defendant argued that "[t]he target site ceased operating in June 2019, nearly three years ago. We have no reason to believe that the public filing of the memorandum could seriously jeopardize any continuing *investigations*." Dkt. No. 100, at 1 (emphasis added).

    (ii)     The name of the country where the FLA operates;

    (iii)    FLA specific terms;[4]

    (iv)    The name of the website targeted in this investigation;

    (v)     Information provided by the FLA to U.S. law enforcement agencies, including the FBI, relevant to the investigation; and

    (vi)    Paperwork provided by the FLA to U.S. law enforcement agencies, including the FBI, relevant to the investigation.

Dkt. No. 121 at 1; Dkt. No. 127 at 1.

The government points out that the defendant's pleas of guilty in this case were conditional pleas and permitted him to appeal the Court's prior Decision and Order denying the defendant's motion to suppress. *See* Dkt. No. 67 at ¶ 7.   The government presents a table of the motions, opposition papers, reply briefs, supporting exhibits, and the Court ruling which it contends are relevant for the defendant's appeal, and the sealing/redaction status, if any, of those filings.  Dkt. No. 127 at 3-7.  This table also presents the government's position as to sealing or redaction of each item listed in the table.  *See id.* The defendant does not challenge that the items listed in the table are the items relevant to his appeal, but, rather than addressing each item individually, challenges the identified categories of sensitive information and the government's reasons for sealing or redacting items in those  categories.  The Court will not reproduce the table but rather will address its decision to the continued sealing or redaction of each particular item.

## III.    DISCUSSION

"The 'notion that the public should have access to the proceedings and documents of courts is integral to our system of government.'" *United States v. Cohen*, 366 F. Supp.

---

[4]The Government notes that "[j]ust as someone who is familiar with U.S. federal law enforcement agencies would recognize a '302' as a report from the FBI, there are certain terms that are unique to the FLA." Dkt. No. 121, at 1, n. 1.

3d 612, 618 (S.D.N.Y. 2019) (quoting *United States v. Erie County*, 763 F.3d 235, 238–39

(2d Cir. 2014)).  "Accordingly, there is a presumptive right of access to judicial documents

rooted in both common law and the First Amendment." *In re Search Warrant Dated Nov. 5,*

*2021*, No. 21MISC813ATSLC, 2021 WL 5830728, at *2 (S.D.N.Y. Dec. 7, 2021)(citing *Erie*

*County*, 763 F.3d at 238–39).

> Under Second Circuit precedent, documents may be sealed in whole or in
> part where it "is essential to preserve higher values and is narrowly tailored to
> serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120
> (2d Cir. 2006) (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir.
> 1987)). The "decision as to access is one best left to the sound discretion of
> the trial court, a discretion to be exercised in light of the relevant facts and
> circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435
> U.S. 589, 599 (1978).
>
> Within the Second Circuit, courts follow a three-step process for determining
> whether documents should be sealed in whole or in part. First, the Court must
> determine whether the item at issue is a "judicial document," that is, whether
> the item is "'relevant to the performance of the judicial function and useful in
> the judicial process.'" *Lugosch*, 435 F.3d at 119 (quoting *United States v.*
> *Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")).  Second, the Court
> "must determine the weight of that presumption [of access]," which is
> "governed by the role of the material at issue in the exercise of Article III
> judicial power and the resultant value of such information to those monitoring
> the federal courts." *Id.* at 119.  Third, the Court must "balance competing
> considerations against" the weight of the presumption. *Id.* at 120.

*Id.*

In evaluating the first step, a court "must assess whether 'the item filed [is] relevant

to the performance of the judicial  function and useful in the judicial process.'" *Id.* at *2

(citing *Amodeo I*, 44 F.3d at 145). "Search warrant applications require the close and

careful scrutiny of a judicial officer, and are thus judicial documents." *In re Search Warrant*,

No. 16 MAG 7063 (PKC), 2016 WL 7339113, at *2 (S.D.N.Y. Dec. 19, 2016).  Thus, the

documents and exhibits filed in support of and in opposition to the defendant's motion to

suppress are deemed judicial documents. The Court's decision on that motion is, of course, a judicial document.

With respect to the second step, the government acknowledges that courts routinely determine that search warrant materials are "entitled to a strong presumption of public access." *See In re Search Warrant Dated Nov. 5, 2021*, 2021 WL 5830728, at *4 (quoting *United States v. Cohen*, 366 F.Supp. 3d 612, 621 (S.D.N.Y. 2019)). The government also correctly indicates that there can be countervailing factors, such as the need to not jeopardize an ongoing criminal investigation, that work against the presumption of public access. *See id.* at *3 (citing *United States v. Amodeo*, 71 F.3d 104, 1048, 1050 (2d Cir. 1995)).

In the third step, a court "must balance competing considerations" against the presumption of public access. *See In re Search Warrant Dated Nov. 5, 2021*, 2021 WL 5830728, at *4 (quoting *Amodeo*, 71 F.3d at 1050). Law enforcement's interest in not having one of its ongoing criminal investigations compromised by the public disclosure of sensitive information contained within search warrant materials can serve as a "strong countervailing factor" against disclosure, and cause a court to hold that the balancing required ultimately comes out in favor of the government. *Id.* at * 6-8. The government also contends that

> U.S. law enforcement has an important public safety interest in receiving valuable investigative information from foreign law enforcement agencies on criminal investigations that span international borders, and that certain foreign law enforcement agencies prefer that their sharing of information with the United States on particular investigations remain confidential. In this case, the FLA wishes that its sharing of information with the FBI and the details of the information it shared remain confidential to the greatest extent possible.

Dkt. No. 127 at 2.

## Ongoing Investigations

Whether the government previously represented that there are only ongoing prosecutions relative to the target website, the government has now clarified its position that there are both ongoing prosecutions and ongoing investigations of others who accessed the target website.  To the extent that the defendant maintains that the government fails to establish that sealing of sensitive information from this case "would jeopardize any pending criminal investigations on a website that has been shut down for three years," Dkt. No. 122 at 2, the Court need only look at this case and the numerous other child pornography prosecutions that commenced after a Tor child pornography website was shut down in June 2019, *see* Dkt. No. 65 at 3, 30, 30 n. 6, 32;[5] *United States v. Kiejzo*, No. CR 4:20-40036-TSH, 2022 WL 1078214, at *1–2 (D. Mass. Apr. 11, 2022);[6] *United States v. Stuart*, No. 21-CR-7-LJV-JJM, 2022 WL 1055151, at *1–3 (W.D.N.Y. Apr. 7, 2022);[7] *United States v. Bateman*, No. 1:20-CR-10012-IT, 2022 WL 980075, at *1 (D.

---

[5](Judge Stewart authorized the federal search and seizure warrant on December 10, 2019, based, in part, on a November 18, 2019 referral to the Albany FBI Field Office containing information from the FLA)

[6](In September 2020, law enforcement sought a search warrant for a residence in Milford, Massachusetts based on information received from a foreign law enforcement agency in August 2019 indicating that, on May 12, 2019, a specific IP address was used to access online child sexual abuse and exploitation material on  two hidden child pornography websites  on the "Tor network" that had operated until June 2019.)

[7]("On October 8, 2020, Judge Roemer issued a search warrant for Stuart's residence . . . based on [an] affidavit . . . [that] explained that the investigation involving Stuart began in August 2019 when a foreign law enforcement agency ("FLA") known to the FBI and with a history of providing reliable, accurate information ... notified the FBI that ... on May 28, 2019, [an IP address later linked to Stuart's residence] was used to access online child sexual abuse and exploitation material via a website that the FLA named and described as the TARGET WEBSITE" that operated on the Tor network until June 2019.)

Mass. Mar. 31, 2022);[8]  or was commenced after a defendant allegedly accessed a Tor

network child pornography website, *see United States v. White*, No. 3:21-CR-155-DJH,

2022 WL 711130, at *1–2 (W.D. Ky. Mar. 9, 2022),[9] to conclude that the government

accurately indicates that there ongoing investigations relative to the Target Website.

Although the aforementioned cases do not reference a particular Tor website in issue or

the foreign federal government agency involved, the cases contain circumstances very

similar to those presented in this case, including in some cases that the Tor web site the

defendant was alleged to have accessed ceased operation in June 2019 as occurred in

this case.  While only evidencing ongoing prosecutions, the cases can reasonably be

interpreted as specific prosecutorial results of the broad-based investigations arising from

information provided by a foreign law enforcement agency to US federal law enforcement

agencies about individuals accessing child pornography on the Tor network. The cases

lend support to the prosecutor's contention that there are broad ongoing investigations of

subjects suspected of accessing the website at issue.

---

[8]("On December 11, 2019, [a federal agent] presented an affidavit in support of an application for a warrant to search Bateman's home for evidence of child pornography. . . . The affidavit went into detail regarding the operation of the Tor network; Website A, a child pornography site that operated on Tor as a hidden service; a tip from a foreign law enforcement agency ("FLA" or "foreign agency") regarding a U.S. IP address that had been used to access Website A on April 20, 2019; and information tying Bateman to that IP address. . . . Through another case in this district, Bateman learned that Website A's operation ceased in June 2019 . . . .")

[9]("On February 8, 2021, [a federal agent] submitted an affidavit in support of a warrant to search White's residence, which the magistrate judge granted. . .  The affidavit alleged that a foreign law enforcement agency had notified the Federal Bureau of Investigation that an IP address located in the United States 'access[ed]' the 'Target Website,' an online channel for users to 'share and distribute child pornography.' . . . The Target Website operated on the 'Tor network.' . . .  A foreign law enforcement agency investigating the Target Website notified the FBI that a United States-based IP address accessed the Target Website on April 11, 2019. . . .  The affidavit stated that the foreign agency had 'a history of providing reliable, accurate information" and discovered the IP address through an investigation 'that was lawfully authorized in the [foreign agency's] country pursuant to its national laws.' . . .  The affidavit further noted that the foreign agency did not access, search, or seize 'any data from any computer in the United States' to obtain the IP address and that United States law enforcement did participate in the foreign agency's investigation.")

Further, because the prosecutor is an officer of the court, the Court credits his

contention that there are ongoing investigations of subjects suspected of accessing the

Target Website.

**Identity of the Target Website and the FLA, and the FLA's Techniques**

The Court also credits the prosecutor's contention that unsealing or un-redacting

documents and materials to reveal law enforcement sensitive information falling in one or

more of the aforementioned categories "could seriously jeopardize (i) the continuing

broader investigation, and the investigation of other subjects suspected of accessing the

child pornography website at issue, by alerting these targets to the name of the website at

issue and providing them an opportunity to destroy evidence, flee and/or alert other

offenders; and (ii) the United States' and the FBI's professional relationship with the FLA,

and the future willingness of the FLA and other similar law enforcement agencies to

provide information and evidence about criminal activity connected to the United States or

its citizens."  Dkt. No. 127 at 7.  "[S]ome law enforcement interests are routinely accepted

as higher values and countervailing factors, including: the protection of law enforcement

techniques and procedures; the protection of the confidentiality of sources; . . . [and] the

protection of ongoing investigations in terms of preventing interference, flight, or other

obstructionist activities." *Hillary v. Vill. of Potsdam*, No. 7:12-CV-1669 GLS/DEP, 2015 WL

902930, at *3 (N.D.N.Y. Mar. 3, 2015)(citations omitted); *see United States v. Strevell*, No.

05-CR-477 (GSS), 2009 WL 577910, at *4 (N.D.N.Y. Mar. 4, 2009) (same); *United States

v. Sater*, No. 98-CR-1101 (ILG), 2019 WL 3288389, at *3 (E.D.N.Y. July 22, 2019)("[T]he

documents contain information that implicates law enforcement interests, including

12

information that may identify the target, subject or status of a particular government investigation."); *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013)("As a general proposition, courts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'")(quoting *Amodeo II*, 71 F.3d at 1050); *see also Lugosch*, 435 F.3d at 120 (noting that the "danger of impairing law enforcement" may be a countervailing factor outweighing the qualified right of access).

Contrary to the defendant's contention, the government need not establish that the targets of the government's investigations "are aware of this case," or that the government has a reason to believe "that the potential targets would or do search PACER records of every CP investigation and our courts to find out if the FBI is onto them." Dkt. No. 128, at 2. The concern is that divulging investigative particulars could alert potential targets and provide them the opportunity to destroy evidence, flee and/or alert other offenders. As is apparent in the many child pornography cases that come before the Court, individuals interested in such material often communicate with others of like predilections over the Internet, in chat rooms, and in various on-line forums. There is a real possibility that disclosure of investigative particulars in this case could, as the government is concerned, tip off potential targets which could jeopardize the government's investigations.

The defendant also argues:

[E]ven if the Court finds the name of the website should be redacted, that cannot justify the broad sealing order the government seeks. The public's right of access to the courts and their decisions is essential to our system of ordered liberty. *United States v. Erie Cty.*, 763 F.3d 235, 238-39 (2d Cir. 2014). A narrowly tailored order could provide for the sealing or redaction of the website's name, but could not justify more than that. The public's right to have access to judicial documents is "integral to our system of government."

13

> *United States v. Donato*, 714 F. App'x 75, 76-77 (2d Cir. 2018) quoting *Erie Cty.*, 763 F.3d at 238-39. The government has not even attempted to show how unsealing the rest of the documents could jeopardize an investigation. That is because it would not.

Dkt.  No. 128 at 2.

The Court agrees with the defendant that the public has a right to access the courts and court decisions, and that any sealing decision must be narrowly tailored to protect that right.  But the Court does not agree that the government has not shown how unsealing documents containing information falling within one or more of the identified categories of law enforcement sensitive information could jeopardize an ongoing investigation. As previously discussed, divulging this information could jeopardize ongoing investigations by tipping off potential targets as to such investigations thereby jeopardizing these investigations. As to whether the continued sealing of these documents is narrowly tailored, the Court will address that issue when it discusses the particular documents and exhibits below.

The defendant also challenges the government's contentions that the FLA "wishes that its sharing of information with the FBI and the details of the information it shared remain confidential to the greatest extent possible," and that the government has a "public safety interest" in receiving information from foreign law enforcement agencies. *See* Dkt. No. 128 at 2.  The defendant argues:

> Foreign governments are aware that, here in the United States, we have a system of government (including the First Amendment) with its demand for public access to judicial documents. The American system of government cannot be compromised because of the preferences of foreign governments.
>
> When foreign law enforcement agencies provide information to this country that results in a criminal prosecution, these foreign governments know or should understand that our Constitution also contains a Sixth Amendment

14

> right to counsel. Here, the sealing order actually prohibits the defendant from possessing the documents on which his pending appeal is based, would require extensive redaction of the briefs to the Court of Appeals, and would prohibit counsel from sharing his own briefs and the government's opposition with Jacob Delaney. (Dkt 38 at ¶ 4) Whatever preferences a foreign government has, the defendant's Sixth Amendment rights must be vindicated; counsel must be permitted to share the documents with his own client and his parents who are keenly interested in their son's welfare.

*Id.* at 2-3.  The defendant also argues that, with regard to the prosecutor's contention that unsealing the documents in this case would jeopardize the government's professional relationship with the FLA and the future willingness of the FLA and other similar law enforcement agencies to provide information about criminal activities connected to the United States or its citizens, "[t]he prosecutor does not provide the basis for this claim. No affidavit or declaration has been submitted showing who said this is true or that the FLA or any other FLA said any such thing. The government also fails to describe what sort of 'details' shared by the FLA purportedly raise a 'public safety interest,' or in what way." Dkt. No. 128 at 3.

The Court credits the government's contention that the FLA wishes that its sharing of information with the FBI and the details of the information shared would remain confidential to the greatest extent possible. It is also beyond peradventure that the government has a public safety interest in receiving information from foreign law enforcement agencies about criminal activity committed by United States citizens especially, in cases such as this one, where the underlying crime was committed on the Internet which spans international borders. Although the defendant argues that the foreign law enforcement agency should know or understand that the public's common law and First Amendment right of access to judicial documents could mean that the information

shared by the foreign law enforcement agency could become a matter of public record, that is precisely what is being addressed on this motion.

Further, there can be little dispute that United States' and the FBI's professional relationship with the FLA, and the future willingness of the FLA and other similar law enforcement agencies to provide information and evidence about criminal activity connected to the United States or its citizens, is a compelling public interest.  While the Court does not find that the FLA's preference about confidentiality drives this Court's decision, the protection of law enforcement investigative techniques has long been deemed a heavy countervailing weight to the public's right of access.  *See, e.g., United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013)("[W]here public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order.")(citations omitted).  Revealing the name of the FLA, the substance of the materials provided to the FBI, and the methods used by the FLA to identify an IP address's access to the Target Website could tip off other potential targets which could jeopardize ongoing criminal investigations.  This is a heavy countervailing weight to the public's presumption of access to judicial documents.

Further, in reaching its conclusion as to whether certain documents or exhibits should be sealed in whole or in part, the Court looks first and primarily to whether divulging the information could jeopardize ongoing investigations - which the Court finds weighs heavily in favor of sealing.  The government's concern with maintaining its relationship with foreign law enforcement agencies is an important one, but it is not the only consideration

16

the Court takes into account. That being said, however, all law enforcement agencies have a significant interest in maintaining relationships with sources of information, including foreign law enformcement and confidential sources, so that the sources and others like them will continue to provide information that supports government investigations.

As to the defendant's Sixth Amendment argument, the protective orders in issue which underlie the sealing of sensitive law enforcement information here do not prevent the defense from sharing this information with the defendant, they only prevent the defendant from having copies of that material.  There is no meritorious claim that the defendant was or will be deprived of information relative to his defense by the sealing of matters in this case. The Court does not find that this issue, even if it means that "it would be cumbersome in the extreme for the parties to have to file redacted briefs and materials under seal" on appeal, Dkt. No. 128 at 3, warrants unsealing of documents and exhibits that could jeopardize ongoing criminal investigations. Indeed, the Court notes that the defense was capable of filing redacted documents in support of the motion to suppress, and no arguments of Sixth Amendment impairment or an unduly burdensome procedure were made. The Court presumes that the same procedures could be followed on appeal, and the defendant's argument in this regard does not weigh on the side of the public's right of access to judicial documents.  Likewise, the defendant's argument that this Court's decision "should be a matter of public record to which the Court of Appeals can refer in its own decision" does not, by itself, outweigh the government's interest in protecting ongoing investigations. Moreover, the Court presumes that the Court of Appeals, having access to all original documents and exhibits, can decide for itself what it wants to refer to in its own decision.

**Individual Documents & Materials**

Based on the conclusions set forth above, "the Court must issue a sealing order 'narrowly tailored' to serve the needs for continued sealing it has identified." *Sater*, 2019 WL 3288389, at *5 (citing *Lugosch*, 435 F.3d at 120). "'[D]istrict courts [should] avoid sealing judicial documents in their entirety unless necessary,'" *id*. (quoting *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008)), "and have no 'power to seal information that, although once sealed, has been publicly revealed.'" *Id*. (quoting *In re Application to Unseal,* 98 Cr. 1101(ILG), 891 F. Supp.2d 296, 300 (E.D.N.Y. 2012)(collecting cases)).

Upon balancing the interests of the common law and First Amendment right of access to the courts and to judicial documents against the government's interests in protecting ongoing investigations and maintaining relationships with sources of information related thereto, the Court finds that the documents, exhibits, and the Court's decision relative to the defendant's suppression motion should be sealed or redacted only to the extent that it prevents disclosure of information that falls into one or more of the six (6) categories of law enforcement sensitive information identified by the government.

The Court has reviewed the documents and exhibits that the government maintains should continue to be sealed in their present form and finds that the sealing in Dkt. Nos. 44 (Defense Memorandum of Law in Support of Motion to Suppress), 45 (Declaration of Defense Attorney Scott Iseman), 46-6 (Exhibit E to Defense Motion to Suppress, Agent Fallon's 12/10/2019 search warrant application and supporting affidavit for the defendant's residence), 51-1 (Government Memorandum of Law in Opposition to Defendant's Motion to Suppress), 55 (Defense Reply Brief), and 65 (the Court's redacted Decision and

18

Order), is too broad.  These documents are too broadly redacted in that the redactions, in

certain instances in each document, concern matters that fall outside the six (6) categories

of sensitive law enforcement information identified by the government.  One example is the

Defense Memorandum of Law in Support of Motion to Suppress, Dkt. No. 44, that has

redactions for references to Special Agent Fallon's supporting affidavit including portions

that do not reference matters falling within the six (6) categories of sensitive law

enforcement information identified by the government.  Further, this document contains

redactions to portions of Special Agent Fallon's supporting affidavit that appear in the

unredacted portions of the Court's redacted decision, Dkt. No. 65.   Accordingly, the

government is directed to prepare redacted versions of these documents so that the

documents are redacted only to exclude information that falls within the six (6) categories

of sensitive law enforcement information identified by the government. The government is

to prepare redacted versions of these documents within two (2) weeks of this Decision and

Order and present them to the Court for in camera review, and present them to the

defense at which time the defense will have the opportunity to render objections if it should

so desire. The defendant shall confine his arguments only to whether the suitability of the

government's proposed redactions.  The Court will not consider any other arguments

addressed to other issues. The Court will then review the redacted documents and

determine whether they should be posted to the public docket.

As to Dkt. No. 46-3 (Exhibit B to Defense Motion to Suppress, Written Materials

from the FLA, on FLA letterhead, to the FBI discussing both the broader investigation and

the investigation specific to the defendant), the government argues that the document

should remain sealed in its entirety as it contains information relating to the six (6)

categories of law enforcement sensitive information identified by the government. The Court agrees and this document shall remain sealed in its entirety.

As to Dkt. No. 46-5 (Exhibit D to Defense Motion to Suppress, Agent Diggons' 11/18/2019 FD-1057 describing the background of the broader investigation and the child pornography website at issue, along with the FLA's role in providing information specific to the defendant's case), the government argues that this document should remain sealed in its entirety as it contains information relating to the six categories the six (6) categories of law enforcement sensitive information identified by the government. The Court agrees with the government that this document contains information that relates to the six (6) categories of law enforcement sensitive information identified by the government, but also notes that in the defendant's application to produce the attachments to Special Agent Diggons' November 18, 2019 FD-1057 the defendant, with the government's permission, publically quoted from selected portions of this document. *See* Dkt. No. 104 at 2-3. Thus, the government is directed to provide the Court and the defendant with a redacted version of this document that removes all information from the document except the quotes from selected portions of this document that the defendant previously publically exposed.

As to Dkt. No. 46-8 (Exhibit I to Defense Motion to Suppress, FD-302 of 12/18/2019 summarizing the 12/12/2019 interviews of the defendant and referencing the targeted website which contained child pornography files accessed by the defendant and other targets of investigation), the government argues that the document should no longer be sealed in its entirety. Rather, the government argues that references to the child pornography website at issue should be redacted from paragraph #2 of the document, and that the remainder of the document should be publicly filed. The Court agrees. The

government is directed to prepare and present to the Court and to the defendant a redacted document that accomplishes this limitation.

As to Dkt. Nos. 51-2 (Exhibit 1 to Government Opposition, recording of defendant's 12/12/2019 residence interview in which he makes reference to the targeted website which contains child pornography files accessed by the defendant and other targets of investigation), 51-3 (Exhibit 2 to Government Opposition, recording of defendant's 12/12/2019 Highland Station interview in which he makes reference to the targeted website which contains child pornography files accessed by the defendant and other targets of investigation), and 51-5 (Exhibit 4 to Government Opposition, recording of defendant's 12/12/2019 post polygraph interview in which he makes reference to the targeted website which contains child pornography files accessed by the defendant and other targets of investigation), the government argues that these recordings should remain sealed in their entirety as they make reference to the targeted website which contains child pornography files accessed by the defendant and other targets of investigation.  The Court agrees with the government that these recordings contain references to the targeted website.  Further, the Court notes that the interviews contained in these recordings occurred after Judge Stewart had issued the subject search warrant, and therefore they played little role in the Court's assessment of whether probable cause existed at the time the warrant was issued. Moreover, the defendant presented no argument that his interviews occurred under circumstances indicating a violation of *Miranda* or any other reason to suppress the statements other than that they were the fruits of the search warrant that the defendant contended was illegal.  Because of the limited role these recordings played in the Court's determination here, and because they do contain references to the subject website, the

21

balance here does not weigh in favor of disclosure. Accordingly, each of these recordings will continue to be sealed in their entirety.

All other documents referenced in the government's table were either originally filed unsealed or were unsealed and publicly filed pursuant to the Court's June 30, 2022 Order.

## IV.   CONCLUSION

For the reasons set forth above, the defendant's application to unseal documents and exhibits in this matter is GRANTED IN PART and DENIED IN PART as discussed above.

**IT IS SO ORDERED.**

Dated: July 19, 2022

Thomas J. McAvoy
Senior, U.S. District Judge